(58 South. 523.)

No. 18,608.

PEOPLE'S BANK & TRUST CO. v. FENWICK SANITARIUM, Limited, et al. (ROY, Intervener).

(April 8, 1912.    Rehearing Denied May 6, 1912.)

(*Syllabus by the Court.*)

1. USURY (§ 22*)—ELEMENTS—SALE OF NEGOTIABLE INSTRUMENT.

Negotiable instruments may be sold for whatever the seller and the buyer may agree on, and where the evidence shows the notes sued on were bought by the holder and were not given merely as the evidence of a loan, the maker will not be heard to say that the difference between the price of the notes and their face value is usurious interest, and that therefore the holder should not be allowed to recover this sum.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 41, 58–61, 63–65; Dec. Dig. § 22.*]

2. MORTGAGES (§ 126*)—PROPERTY INCLUDED.

The property claimed by the intervener was always considered as the property of the Sanitarium. It was sold to the Sanitarium company, and, under the issues, and in accordance to interest of parties, as made to appear by the issues as presented, the whole property is within the group of the mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 248, 261–265; Dec. Dig. § 126.*]

Appeal from Seventeenth Judicial District Court, Parish of Vermillion; W. P. Edwards, Judge.

Action by the People's Bank & Trust Company against the Fenwick Sanitarium, Limited, and others; and Noemie Roy intervenes. From a judgment for defendants and intervener, plaintiff appeals. Modified.

Gordy & Gordy, Thomas Furlow, and R. H. Marr, for appellant. Caffery, Quintero, Gidiere & Brumby, Kitchell & Bailey, and John Nugier, Jr., for appellees.

BREAUX, C. J. Plaintiff, owner of a series of notes, brought this suit to foreclose by ordinary process the mortgage by which they were secured.

These notes were signed by the defendant to its own order and by it indorsed. They were also signed by Dr. F. F. Young. The last two of the series of these notes were signed by 15 others as indorsers.

The president of the company, Mr. McPherson, refused to defend the suit for the reasons hereafter stated.

The indorser, Dr. F. F. Young, filed a general denial for himself as indorser and as a shareholder of the corporation, owning nearly all of the shares. He denied that the corporation received $66,000, but averred that it received $57,500, and that the difference between the $66,000 and the $57,500 was usurious interest; also, that the 8 per cent. interest per annum from date of the notes was usurious; that plaintiff received $30,000 of the capital stock of the corporation as a bonus. He asks that all the alleged usurious interest be declared forfeited.

To the extent that this defendant answered for the corporation, plaintiff objected on the ground that there was no fraud charged or any wrong, and that the shareholders had no right, in the absence of good reason, to represent the corporation in a suit.

Mrs. Noemie Young, wife of Dr. F. F. Young, intervened in the suit and alleged that she is the owner of the movable property in the building known as the Fenwick Sanitarium, valued at $28,000; that the property was transferred to her by Dr. Young, her husband, as a dation en paiement; that since the dation en paiement had been made she leased this property to the

Sanitarium; and that it holds it under a lease.

The president of the Fenwick Sanitarium, Mr. McPherson, in answer to the petition of intervention, alleged that the fixtures and furniture claimed by the intervener, as above stated made to her, was not the property of the vendor at the date of the sale; that, long prior to that date, by notarial act, duly recorded, Dr. Young sold this property to the Sanitarium; that it formed a part of the Sanitarium. He asked that the demand of intervener be rejected.

The People's Bank & Trust Company also answered intervener's demand, and its allegations were similar to those made by the defendant Sanitarium in its answer to the intervener's demand, and, in addition, claimed that its mortgage on the Sanitarium property includes the whole of the enumerated property described in intervener's petition; that it is all appurtenant to and forms part of the Sanitarium; that a part of the property claimed by intervener is immovable by destination, and another part is covered by the mortgage because it is indispensable to the Sanitarium.

It was developed on the trial that a statement of the property inventoried at the time that Dr. Young sold the Sanitarium to the corporation, known as the Fenwick Sanitarium, was carried on the journal of the Fenwick Sanitarium. But in the deed of sale by Dr. Young to the Sanitarium it is not clearly stated whether or not this property was included. The following is the description in the deed of sale by Dr. Young to the Sanitarium, to wit:

"Block known as the Fenwick Sanitarium, consisting of lots, besides other lots in other blocks, together with all the buildings and improvements situated on lots 1 and 2."

The financial agent of the Sanitarium, Mr. Chappius, testified that, in order that he might prepare a financial statement for the purpose of floating bonds on the property in accordance with a resolution of the board of directors, he opened a set of double entry books for the Fenwick Sanitarium, in which this property figured as belonging to the Sanitarium; that the members of the board of directors signed a list of the property of the Sanitarium to be submitted to investors, which included the furniture and fixtures, constituting the list of property claimed by the intervener.

One of the members of the board of directors of the corporation, Mr. Rivera, testified that Dr. Young sold to the Fenwick Sanitarium all of its appurtenances and equipments.

These are the only facts which we will refer to at this time, relating to intervener's claim.

About the time that the property was transferred by Dr. Young to the Sanitarium, the valuation of all the property was placed at $125,000; that is the valuation which was submitted to investors.

The facts as between plaintiff and defendant are that, a few months after it was attempted to sell bonds to be secured by mortgage, the project of selling bonds was abandoned. On the 4th of May, 1909, creditors of the Sanitarium were pressing their claims; it became important to raise money to pay them to avoid a sale and possible sacrifice of the property.

The board of directors, in order to obtain the needed funds to pay the indebtedness, authorized its president, D. L. McPherson, to mortgage the property for the sum of $60,000, to be represented by 9 promissory notes, payable to its own order and by it indorsed, conditioned to draw 8 per cent. interest from date.

It was understood a few days prior to the date of the confection of the mortgage that the People's Bank & Trust Company would buy the notes. Its president, together with

the president of the Sanitarium, agreed as to all the terms and conditions, and plaintiff employed Judge Gordy to attend to its interest in preparing the act.

The property mortgaged substantially is described as in the act of sale of Dr. Young to the Sanitarium, except that in the act of mortgage it is stated that the property consisting of lots, buildings, and improvements thereon situated, including the contents thereof, consisting of beds, bedding, surgical instruments, appurtenances, electrical appliances, and all other furniture and ornaments necessary to operate the Sanitarium, were mortgaged.

Were the notes bought, or did plaintiff make a loan of the amount claimed, is the important question.

The president of the bank,· Mr. Joseph Collins, swore that it was a sale, and that no other contract had ever been thought of by the plaintiff. He specially referred to conversations had by him with gentlemen representing the Sanitarium while in this city, in which only the question of sale was discussed. One of these parties representing the Sanitarium was its president. He entirely corroborates the plaintiff. The other does not contradict the plaintiff. He, at any rate, does not give a different account of the negotiation had with him, the president of the bank.

The president of the Sanitarium, McPherson, positively refused to defend the suit, giving as his reason that he had sold the notes to plaintiff, and, having thus sold them, he would not place himself in the position of claiming that it was not a sale but a loan. His testimony is clear, direct, and positive, and, as, we understand, to confirm the position taken by him that it was a sale and not a purchase, his testimony leads to only one conclusion that it was not an unconscionable transaction. It was not if the following be as stated (and we have no reason to infer that it was not as stated): He,

as a witness, considered the value of the stock at the time at 50 cents on the dollar;. that is, on stock issued on total capital stated of $125,000, amount at which it had been proposed to bond the property and in that way finance the institution. He also testified that no dividend had ever been paid. Furthermore, that the creditor advanced the taxes and insurance. All of this goes to show that, if the plaintiff had at the time bought all of defendant's holdings at the price of $57,500, it would not have been unreasonable; at any rate, not a fraud or a wrong in so far as we can discover.

But, to return to the negotiations which resulted in the sale: When vendor and vendee concur in testifying that it was a sale and not a loan or mortgage, and the correctness of the statement is not challenged by any one present at the time at these negotiations, we feel constrained to consider it as a sale. These negotiations were not complicated; they were, on the contrary, simple; there was little or no room for misunderstanding.

Mr. E. T. Chappius, a well-known accountant, by whom the negotiations were conducted leading to the sale, swears positively that it was a sale. He refers to the papers and letters in evidence, "in which the deed is referred to as a sale." He particularly swore that, as financial agent of the defendant company, he labored to sell the bonds mentioned in the testimony, but all in vain. He was finally forced to the conclusion that there was only one way possible to pay the indebtedness which was pressing, and that was by a sale of first-mortgage notes bearing on all of defendant's property; that he finally succeeded in interesting the bank's people to the extent of their consenting to buy if the notes were properly secured by mortgage, which was done in accordance with the agreement of parties.

All the witnesses were men of affairs, and

certainly knew very well the difference between a sale and a loan.

The authority of those who took part in the act of selling the notes is not at all questioned.

The cashier of the bank, who personally knew nothing of the transaction referred to, also testified that the notes were treated and considered in the management of the bank as values owned by the bank. It remains as a fact that the bank people, understanding that it was a sale, paid the whole amount, and it was received by defendant.

It is true that one of the defendants, Dr. F. F. Young, who testified, understood the negotiations differently. He was not present, was at his home in Abbeville, and does not personally know what took place or what was said. When the matter was called to his attention, he demurred for a time; but it remains as a fact that the papers were signed and the amount was received.

[1] Notes may be transferred as any other value, provided they are not transferred in disguise to the end of avoiding the usury laws.

From Parsons on Bills & Notes, we quote:

"That negotiable paper may be sold for whatever it is worth or for whatever the seller and buyer may agree upon, it would seem absurd to deny." Volume 2, p. 426.

We have carefully read the opinion of our learned Brother of the district court, and from it we quote, to wit:

"It may be that one may sell his own note through the medium of an agent or a broker at a greater discount than 8 per cent. interest without their being usury."

He cites Byrne v. Grayson, 15 La. Ann. 457, and adds:

"That a case might be supposed where a man might himself in person sell such a note as his own at a greater discount than 8 per cent. and still there would be no usury; but this case has all the characteristics of a loan and not a sale."

In Bank of Louisiana v. Briscoe, 3 La. Ann. 157, it was held there was no usury; but the legal principles announced therein make this cause one of usury.

We have also carefully read the third Annual case cited above. The court, in the last-cited case (3 La. Ann.), that the principle which was established by article 2895, Old Code, has always been limited to loans of money, but it has been held not to apply to purchase and sale "of promissory notes, bills of exchange, and other negotiable instruments, nor to the transfer and sale of credits."

As we are of opinion that, in the pending case for decision, there was a sale and not a loan, it follows that the decision above cited sustains our view; that is, that in all sales in good faith for a valid consideration there is no usury.

The able judge of the district court finds some support in those principles which properly enough seek to restrain the excessive and injurious influence of capital and keep it within due bounds and at the same time protect all interests.

No question but that capital is not worth over 8 per cent. interest, and no one should charge over that rate either directly or indirectly.

If a flat rate were adopted, without condition or exceptions, it would be doubtless in public interest. But there are exceptions. Interest may be capitalized, and sales may be made provided in case of sales it is not a mere disguise for charging mere usurious interest.

[2] We are brought by the foregoing to the intervention of Mrs. Young.

Taking up in the first place the mortgage held by plaintiff as owner, the deed shows the following, referring to the property mortgaged to secure the payment of the notes sued on by plaintiff:

The array of facts regarding the property

claimed by intervener has a peculiar appearance. To begin:

The corporation was in debt to such an amount that, to save the property from sheriff's sale, a move had to be made. The owner conceived the idea, properly enough, that, through a corporation, funds might be obtained. A charter was adopted. To each officer, from the president down the list, the usual power was delegated. The board of directors adopted a resolution, after the company was organized and prior to the purchase from the former owner, in which they consented to buy the property known as the "Fenwick Sanitarium and other properties" for $125,-000. The property is described as the "Fenwick Sanitarium Block"; one of the boundaries of one of the lots was the "Sanitarium property."

On the 14th day of November, 1908, the former owner sold the property described in the deed to D. L. McPherson, president of the Sanitarium Company, who is authorized to make this purchase by virtue of the resolution of the board to which we have referred above. The entire block, known as the "Sanitarium Block," then follows a description.

With this property, the debtor conveyed his own residence property.

E. T. Chappius testified:

"Dr. Young showed me all the furniture and fixtures contained in the Sanitarium in the month of November, 1908, as belonging at the time to himself as owner of the Sanitarium property and which he turned over to the Sanitarium Company."

That he had an inventory taken of the furniture, fixtures, and other property, amounting in value to about $28,000, some time in December, 1908, through one of his clerks, T. S. Ellis, who at that time made a careful inventory of all the furniture and fixtures contained in the Sanitarium building. He said that, after the organization of the corporation had been completed, Dr. Young stated to the board of directors that his offer to sell included everything, save and except his surgical instruments, his horse and buggy, and his household goods at his residence. That the furniture and fixtures and everything included in the Sanitarium, excepting his surgical instruments, were sold to the corporation and purchased by them.

"I am positive that everything was sold, even to the right and use of the name 'Fenwick,' because this was discussed at the time of the sale. That it was the purpose to continue in operating the Sanitarium, which would not have been done without the fixtures and appliances."

The president of the Sanitarium Company, who must be held to have had some authority, in his answer to the intervention, alleges that, by notarial act, the property was sold to the Sanitarium by Dr. Young; that it included all that belonged to the Sanitarium, all pointed out by the former proprietor; that it was the purpose to find out what belonged to the Sanitarium for the purpose of floating bonds on the property, obtaining a loan on the property, or obtaining money by the sale of their mortgage notes.

The inventory was made part of the journal entry in the opening of a set of double entry books, and it was delivered to Dr. F. F. Young. That some of the members of the board of directors of the Fenwick Sanitarium, including Dr. F. F. Young, did officially sign a document showing the property of the Fenwick Sanitarium, Ltd., which included among other property the furniture and fixtures in the Fenwick Sanitarium. John T. Robira, who was a stockholder at the time, a member of the board of directors, and a relative of Dr. Young, testified that he was familiar with the circumstances leading up to the organization of the Fenwick Sanitarium, together with the Sanitarium which contained them, all of which they formed a part; that they belonged to the

Sanitarium at the date of the sale to the intervener.

He prayed that the property mortgaged to execute the note owned by plaintiff be recognized.

Besides, it is in evidence that the Sanitarium could not have been operated without lavatories, washstands, light fixtures, and the other property in the building; that the fixtures and other property enumerated in the dation en paiement, under which the intervener claims, were the same which had belonged to Dr. Young before the organization of the Fenwick Sanitarium Company, except possibly a few added since.

In the mortgage owned by plaintiff, the property is described as the entire block known as the Fenwick Sanitarium, consisting of lots (numbered), together with all buildings and improvements thereon situated, including the contents thereof, consisting of beds, bedding, surgical instruments and appurtenances, and all necessary appliances, furniture, and other things necessary to operate the said Sanitarium.

The property itself is not separately mortgageable; it is referred to as showing that the whole Sanitarium was included.

As relates to the sale—Dr. Young to the corporation—the issues are within the article of the Code:

"Sale or gift of a house includes all movable effects save those excepted." Civ. Code, art. 480.

If this does not apply to the mortgage, it applies to the sale and shows that which all parties conceived at the time had been sold to the Sanitarium.

At most, the property would belong to the corporation, the president of which officially alleged that it was mortgaged, and the other party, defendant, does not ask that it be recognized as owned by the corporation.

It is a question of intervention.

Commenting in regard to article 536 of the French Code (480 of ours) Huc:

"Les juges ne sont donc liés par les définitions qu'ils contiennent que s'il n'est pas établi que les contractants ou le disposant ont entendu donner aux terms par eux employés une signification differente de celle que la loi leur attribue. (1) Donc toute décision fondée non sur le texte des articles précites, mais sur la volonte des parties échappé à la censure de la Cour Supreme."

See Marcade, same article, and Aubry and Rau.

The declaration of the owner, Dr. Young, prior to and after his sale to the corporation of the property claimed subsequently by the intervener, makes it one property.

He is estopped, in view of the different declarations and the acceptance of the property as a whole.

There was an inventory made of this property, and thereafter the property was carried on the journal of the Sanitarium as owned by it.

The property sold to the Sanitarium was the property mortgaged to the plaintiff.

For reasons stated, it is ordered, adjudged, and decreed that the judgment of the district court be amended by striking therefrom that part which reduces the amount to $57,500 interest and the fee of attorney thereon. It is further ordered, adjudged, and decreed that the amount of plaintiff's claim as the owner of the notes upon which the suit was brought is in the amount for which it prays and which is hereby granted as prayed for; that is, judgment is granted in favor of plaintiff against defendant for $66,000 instead of the $57,500 allowed by the district court, and plaintiff's prayer in regard to the foreclosure of the mortgage is granted, as the mortgage is recognized as valid and binding as to the amount of the $66,000, interest, and fee of attorney (interest from date claimed in the petition). Intervener's demand is rejected, and her suit is dismissed, and that part of the judgment

allowing her certain movable property is eliminated from the judgment of the district court. With these amendments, the judgment is affirmed. Defendant and appellee to pay the costs of both courts as between plaintiff and defendant, and the intervener to pay costs of the intervention in both courts.