WRIGHT v. LYNSKEY et al.   (No. 2667.)

(Court of Civil Appeals of Texas. Amarillo.
April 21, 1926.  Rehearing Denied
June 2, 1926.)

**1. Courts ⟨⊸⟩37(3).**

District court of one county *held* to have jurisdiction to adjudicate matter of claim of payee of note to lien on certain property though such payee's receivership was pending in district court of another county, where receiver *voluntarily appeared and filed no plea of privilege.*

**2. Appeal and error ⟨⊸⟩173(2), 673(2)—Contention that buyers of contracts in home builders' company were partners because it was organized under declaration of trust cannot be entertained on appeal, where declaration of trust was not in record, and contention was not made in trial court.**

Contention of receiver of home builders' company that all buyers of its contracts were partners because it was organized under declaration of trust cannot be entertained on appeal in action in which it claimed lien on certain lot to secure a note, where such declaration of trust was not in record and no such contention was made in trial court.

**3. Building and loan associations ⟨⊸⟩6(1)—Fact that owner of lot held contract of house builders' company, which might ultimately have been converted into stock at her option, and that she executed mortgage on property to secure loan, held not to make her member of company.**

Fact that owner of lot held contract of house builders' company, which might ultimately have been converted into stock at her option, and that she executed mortgage on property to secure loan, *held* not to make her member of company.

**4. Evidence ⟨⊸⟩434(8).**

Parol evidence is admissible to show fraud inducing contract between home builders' company and property owner.

**5. Courts ⟨⊸⟩478—Both district and appellate courts held unauthorized to strike balance between landowner and home builders' company, whose receivership was pending in another county, in action by construction company against them to foreclose mechanic's lien.**

In action by construction company to foreclose mechanic's lien against landowner and home builders' company which held notes secured by lien on part of same land, both district court and Court of Civil Appeals *held* unauthorized to strike any balance and make any adjustment between landowner and home builders' company whose receivership was pending in another county.

**6. Appeal and error ⟨⊸⟩932(1)—In action by construction company to foreclose mechanic's lien, brought against home builders' company and landowner who held contract therein, judgment striking balance between defendants held presumed correct.**

In action by construction company to foreclose mechanic's lien, brought against home builders' company and landowner who held contract therein, judgment striking balance between defendants *held* presumptively correct, in absence of showing in record that there were other contract holders, that home builders' company was insolvent, and that rights of other parties had been invaded.

**7. Building and loan associations ⟨⊸⟩42(16).**

Where home builders' company fraudulently induced borrower to make contract, thereby obtaining lien on her property without consideration, its receiver cannot complain of amount of judgment on his claim against such property, allowing recovery only for amount of note less payments made on contract.

Error from District Court, Wichita County; W. W. Cook, Special Judge.

Action by the West Texas Construction Company against Mrs. M. E. Lynskey and others. The judgment determined the claims of various parties, and defendant, G. G Wright, receiver for the United Home Builders of America, brings error. Affirmed.

J. L. Zumwalt and J. W. Pope, both of Dallas, for plaintiff in error.

Jos. H. Aynesworth and Edgar Mann, both of Wichita Falls, for defendants in error.

HALL, C. J.  The West Texas Construction Company filed this suit against Mrs. M. E. Lynskey, a feme sole, John M. Scott, state commissioner of insurance, and G. G. Wright, as receiver for the United Home Builders of America. The substance of the petition is that on the 15th day of May, 1922, the defendant Mrs. Lynskey was the owner of lot 1 in block 204 of the original town of Wichita Falls, Tex. Said lot fronts 150 feet on the west side of Eleventh street, and on said last named date Mrs. Lynskey executed a mechanic's lien contract for the purpose of securing the plaintiff in the payment of $1,575.08 for improvements which plaintiff made upon said property by paving the street.

It is further alleged that the materials and labor were provided by plaintiff and the improvements completed in accordance with the paving lien contract; that the work was accepted by the city of Wichita Falls, and, under the contract, the amount became due and payable in installments; that Mrs. Lynskey

made default in the payment of the first installment, which was due March 8, 1923, and the plaintiff exercised its option under the contract and declared the full amount due, including attorney's fees, and placed the claim in the hands of its attorneys for suit; that the improvements could not be removed without destroying same and damaging the freehold; that the claims of Scott and Wright are inferior to the claims of the plaintiff paving company; that the improvements had enhanced the value of the property in the sum of at least $1,800.

The defendant, John M. Scott, answered by general demurrer, special exceptions, and alleged that Mrs. Lynskey executed her note in the sum of $6,800 to the trustees of the United Home Builders of America, and that it was secured by a deed of trust on 70x100 feet of lot 1 in block 204 of the city of Wichita Falls, and that the lien was superior to that of the plaintiff, and prayed for recovery upon the note and for foreclosure of the lien.

Mrs. Lynskey answered, admitting the execution of the note, but said it was induced by the fraudulent promise that if she would take stock or interest with the United Home Builders of America, of which the appellant, G. G. Wright, is now the receiver and the real party at interest, that she could borrow money from them at the rate of 3 per cent. per annum, and that all payments by bonus, assessments, fines, or interest would be ultimately applied upon the note that she was called upon to execute. She charges that Scott, as the commissioner of insurance, and Wright, as receiver, had notice and knowledge of the manner and method by which she was induced to take stock or acquire an interest in the company and to execute the note, and alleged that the said Wright was not an innocent holder thereof. That she was entitled to the benefit of payments which she had made to the United Home Builders of America, which amounted in all to $4,058.60. That she had only received on said note for $6,800 the sum of $4,410; the difference between the amount that she had received and the amount she had paid she was ready and willing to pay, after she had been given full credit for the various sums set out; that the note sued upon was obtained from her by means of false and fraudulent representations made by the United Home Builders of America; that the rate of interest she would have to pay upon said loan would be only 3 per cent. per annum; and that all payments she should make upon stock or otherwise would be in the meantime applied to said note; and that all stock in the end amounted to payment on the note; and that she relied on said statements.

She further alleges she did not desire to take any stock or acquire any interest in said company, but was fraudulently induced to do so by the representations of said company's officers and agents, in that she purchased membership contracts in the same, which was done for the sole purpose of procuring a loan; that it was part of the plan for obtaining a loan in the company; that she was not desirous of taking any stock in any concern, and was not able to do so, but thought she was, in truth and in fact, securing a loan, and, being advised by the agents of the company that it would make such loan as she desired, upon security to be furnished by her, and that as a means of obtaining said loan it was necessary for her to apply for stock in said company and to purchase membership contracts; that as a means of procuring said loan she was directed to apply for certain shares of stock or membership contracts in the company, and was directed to make certain payments thereon for the purpose of obtaining the loan desired by her; that said agents fraudulently represented that all sums of money that would be paid by her upon the contracts were to be applied on the repayment of such loans as might be made; that defendant was not aware of the business methods of the said company, other than evidenced to her by its said officers and agents; that she made the payments and parted with her money upon the faith of such fraudulent representations and inducements; that she had acquired about $16,000 worth of contracts or stock, and had paid thereon the sum of $4,080.60; that there was no other or further consideration for her to execute and deliver the note than the sum of $4,410 that she received thereon; that unless the amount which she had paid on said contracts be allowed as a credit upon said note, that said note and subscription contract was a fraud upon her rights; and that if she was required to pay the said receiver the amount called for, she would ultimately pay a greater rate of interest than is allowed by law; and that the contract was therefore usurious. She prayed that she be permitted to rescind the contract.

The defendant, Wright, denied that any fraud was practiced on Mrs. Lynskey, and alleged that the company was operating under the supervision of the commissioner of insurance of Texas, who had approved said contract; that the only way in which a loan could be made was to persons holding matured contracts. He denied the payments as alleged by her, and prayed for judgment for the full amount of the note, with the foreclosure, and that the amounts paid by her on the contract be not applied to the payment and satisfaction of the note. He further alleged that his lien upon the property was prior to the lien asserted by plaintiff.

The trial was before the court without a jury, and resulted in a judgment foreclosing plaintiff's lien against all of the property, and foreclosing the receiver's lien against the east 100 feet of the lot fronting on Eleventh street. The decree is in favor of the plaintiff for the sum of $1,935.26, and in favor of

the receiver for the sum of $1,976. The court ordered the west 50 feet fronting on Eleventh street to be sold first and the proceeds applied to the payment of the plaintiff's judgment against Mrs. Lynskey, and that the proceeds of the balance of the 100 feet should be applied first to the payment of the receiver's judgment; the remainder of the proceeds, if any, to be applied to any unsatisfied balance of the amount due plaintiff.

[1] A considerable part of the receiver's brief is devoted to the contention that, because of the receivership pending in the district court of Dallas county, that the district court of Wichita county was without jurisdiction to adjudicate the matters in controversy. The receiver filed no plea of privilege nor raised the issue by his pleadings in any other form; nor is there a line of testimony in the record which tends to show that the affairs of the United Home Builders of America is being administered in the courts of Dallas county. While the trial judge found as a fact that the United Home Builders of America had defaulted in its ability to carry out the terms of the original contracts, and had permitted itself to be placed in the hands of a receiver and have its affairs wound up by the courts of this and other states, and further found that the general office of the company was in Dallas, there is nothing, aside from the allegations in the pleadings of plaintiff and Mrs. Lynskey, to show that the United Home Builders of America was, in fact, in the hands of a receiver, or that its affairs were being administered and wound up by the courts of Dallas county, or elsewhere. The pleadings were not introduced in evidence. There is no testimony that the United Home Builders of America was placed in the hands of a receiver because of its insolvency. So far as this court knows, its assets were in excess of its liabilities, and the receivership is the result of the act of the Legislature (Acts 38th Leg. [1923] c. 157), repealing the statute of Texas, title 25, c. 25B (Vernon's Ann. Civ. St. Supp. 1918, 1922), under which the receiver asserts the company was organized.

The company was made a party defendant by plaintiff, and its receiver voluntarily appeared and answered in the district court of Wichita county, and, without protest or objection except by brief in this court, submitted itself to the jurisdiction of the Wichita county district court; and, since no effort is shown to interfere with any of the property of the company in the hands of the receiver, the right of the district court to determine the issues made by its pleadings cannot be questioned here. Paine v. Carpenter, 51 Tex. Civ. App. 191, 111 S. W. 430; Dilworth & Marshall v. Kirby (Tex. Civ. App.) 253 S. W. 860; Id. (Tex. Com. App.) 260 S. W. 152.

[2, 3] The attorney for the receiver insisted, in the course of his oral argument, that because the United Home Builders of America was organized under a declaration of trust, that Mrs. Lynskey and all other purchasers of their contracts, including borrowers, were partners, and that the rights of the parties to this action must be determined upon the principles governing the accounting and settlement of partnership affairs. The declaration of trust is not in the record, and since no such contention was made in the trial court, it cannot be entertained here. We are not called upon to pass upon the question as to whether the United Home Builders of America was a partnership, joint adventure, or other form of an unincorporated association. One of the blank forms of contract which was sold to her is made a part of the statement of facts. It is unusually long, tedious, indefinite, and confusing in its terms, but we find nothing in it which tends to create any other relation between Mrs. Lynskey and the company than that of borrower and lender. The fact that she held a contract which might ultimately have been converted into stock at her option would not make her a member of the company, nor would she become a member by virtue of the fact that she had executed a mortgage upon her property to secure a loan. Grohmann v. Brown, 68 Mo. App. 630; Kadish v. Garden City Equitable Loan Association, 151 Ill. 531, 38 N. E. 236, 42 Am. St. Rep. 256.

In the findings of fact filed by the trial judge, he finds that Mrs. Lynskey had no intention of becoming a member of the United Home Builders of America; that she merely applied for a loan of certain funds, which the officers of the company agreed she might have, with interest at the rate of 3 per cent. per annum. He further finds that she received in cash in the way of loans only $4,410, $4,058 of which sum she had repaid; that beyond the amount actually loaned her there was no consideration moving to her for the remainder of the note upon which the receiver's action is based, and that the note executed by her was the result of the fraudulent representations and promises made to her at the time.

[4] The receiver contends that evidence was inadmissible to vary the terms of the contract between the United Home Builders of America and Mrs. Lynskey, as evidenced by the note and the written contracts which she purchased. This contention is without merit. When a party is induced to enter into a contract through the fraudulent representations of another, the parol evidence rule has no application. This is too well settled to require the citation of authorities. The court having found that there was actual fraud, and there being ample evidence to support the finding, further discussion of this contention is unnecessary.

We regret to say that the appellant's brief has been of very little assistance to us in solving the numerous problems presented.

It is made up of 70 typewritten pages, and the .contentions are presented under 11 different "points," of which the following is a sample:

"First Point: The following is submitted as germane . to section 8 of the assignments of error (transcript page 129)."

Under these 11 points the contentions have been subdivided into 68 propositions, a majority of which are simply the statement of abstract propositions of law, such as:

"The findings of fact of the court must be supported by the testimony."
"Parties to .a written contract are bound thereby."

Many of the remaining propositions are too indefinite and confusing to present any question for consideration, of which the following is a fair sample:

"Where a party to a written contract is fully informed of its terms and conditions, any finding by the court that she relief upon parol statements are contrary to said written contract and improper and insolvent to support a judgment." '

A brief so carelessly prepared necessarily requires time and labor which appellate courts should not be required to expend, and greatly hampers us in disposing of the business of the court. The statements under many of these propositions in many instances do not refer to the statement of facts, manifestly for the reason that there is nothing in the statement of facts to support them. The propositions which we have not considered in detail are either subject to these objections, or else they are based upon the assumption that the affairs of the receivership were being administered by the court which tried this case. It is contended upon the one hand that, because the United Home Builders of America is insolvent, its funds must be distributed pro rata amongst an unknown number of borrowers and contract holders. So far as the record shows, only eight other parties ever purchased any contracts from the association, and this information is conveyed by brief statements in the statement of facts, of which the following is a sample:

"Contract (in above form) issued to W. B. Miller, McKinney, Texas, on the 24th day of October, 1919, in the sum of $1,000.00, class A, No. 1302; said contract being on the 24th day of December, 1921, transferred by W. B. Miller to Mrs. M. E. Lynskey, stamped in rubber stamping: Applied on bonus loan No. 2422A, settle 4—under section 5, November 4, 1921."

While it is not 'so stated in the record, we may presume that this is one of the eight contracts which Mrs. Lynskey purchased, and which she says the manager of the company took from his files in the office at Dallas and delivered to her at the time of the loan, and for which the receiver insists the company is entitled to charge her a bonus of $150, to be credited to it upon a final settlement and adjustment with her of her indebtedness. Her contention with reference to these contracts was sustained by the court's findings and is supported by the evidence. She denied that she requested the defendant to purchase these contracts, or that. they had a par value of $150 bonus, and says they were not purchased for her, but were already in the possession of the company and were delivered to her at the time she made the loan as a part of the formalities under which the manager of the association foisted them upon her.

[5] In her brief, Mrs. Lynskey does not attempt to discuss the numerous points and propositions advanced by appellant in their order, for the obvious reason that it is practically impossible to do so and present her contentions in an intelligent manner here. The sum and substance of her contention is that in winding up the affairs of a building and loan association and the settlement of its affairs with the various contract holders, that it was the duty of the court, where the company suspended operations and ceased to do business, to strike a true and correct balance by charging the borrower with the actual amount of money received and crediting him with the actual amount of money paid under the original contract, regardless of whether such amounts as have been paid are denominated bonuses, assessments, fines, dues, interest or installments. The trouble with this contention is that the district court at Wichita Falls was not charged with the duty of striking any such a balance, as it had no jurisdiction of the affairs of the United Home Builders of America's business generally. From the record before us, that court did not know what the assets of the association amounted to, and was equally ignorant of the amount of its liabilities. Under the pleadings of the parties, it had no authority to strike any balance or make any adjustment under that rule between Mrs. Lynskey and the company, and, of course, this court is without such authority.

[6, 7] It appears from the judgment, however, that the trial judge adopted that rule, and, in the absence of something in the record which shows that there are other contract holders, that the United Home Builders of America was insolvent, and that the rights of other parties have been invaded by the trial court's judgment, we cannot review his judgment. In the absence of any such information, we must presume that the judgment is in all things correct in this particular. She alleged that her money was obtained by fraudulent representations, and proved her allegations to the satisfaction of the trial judge. If there was fraud in the inception of the contract, and a lien was obtained upon her property without consideration, the receiver has no ground to complain of the amount of his judgment.

Upon the record before us, we believe a proper judgment has been entered, and it is therefore affirmed.