**LUBBOCK HOTEL CO. et al. v. GUARANTY BANK & TRUST CO. et al.**

No. 7384.

Circuit Court of Appeals, Fifth Circuit.
April 23, 1935.

Rehearing Denied June 6, 1935.

James Lawson Goggans, of Dallas, Tex., for appellants.

H. Grady Price, of New Orleans, La., and Chas. C. Crenshaw, of Lubbock, Tex., for appellees.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This appeal is from a decree in the suit of the successor trustee against the Lubbock Hotel Company and its receiver, establishing an indebtedness of mortgage bondholders in the sum of $346,480.17, ordering the lien foreclosed, and directing that the decree be certified to the state district court in which the receivership of the Lubbock Hotel Company is pending, for observance and enforcement.

The decree was entered after a full hearing on the merits, and on findings of fact and law fully sustaining it. Summarized, these findings are: That on or about April 15, 1929, the Lubbock Hotel Company executed to the Canal Bank & Trust Company, a corporation of the state of Louisiana, as corporate trustee, and to J. M. Walker, a citizen of Louisiana, as individual trustee, a certain deed of trust and bond indenture bearing that date; that this instrument, executed for the purpose of securing an issue of bonds in the principal amount of $325,000, being 354 coupon bonds, all payable in New Orleans, La., conveyed to the Canal Bank & Trust Company all of the real estate, property rights, etc., described therein, and all of the estate of the Lubbock Hotel Company in possession or expectancy in that property; that at or about the time of the execution of the mortgage the Lubbock Hotel Company, duly authorized to do so, sold the Canal Bank & Trust Company and the Mortgage & Securities Company of New Orleans, La., all of the bonds; that the corporate and the individual trustees accepted the deed of trust and bond indenture and the trust thereunder, and united in executing it, and the Canal Bank & Trust Company continued to act as trustee, until on or about May 21, 1933, when it was placed in liquidation; that the Guaranty Bank & Trust Company of Alexandria, La., has become successor by substitution, and ever since the date of such substitution has continually acted as corporate trustee, and it and J. M. Walker, the individual trustee, are authorized to maintain the suit; that the Lubbock Hotel Company, on or about the 4th of May, 1929, entered into a lease contract with the Lubbock Hotel Operating Company by which it leased the premises to that company, and thereafter, on the same day, it did transfer to the trustees in the bond instrument the said lease as collateral for the better securing of the holders of the bonds; that the Hotel Company made default in the payment of the interest maturing on June 1, 1932, and also in the payment of the principal of the bonds maturing that same day; that by the terms of the indenture the hotel company was to pay the taxes, assessments, governmental charges, etc., and it permitted them to go delinquent; that under the indenture it obligated itself to permit the trustees in the deed of trust, in the event of default, to collect and receive all rents, but, though it has defaulted, it has refused to permit them to do so; that the deed of trust provided that it should constitute a default if it permitted a receiver to be appointed, and did not contest the order and decree; that the company did permit a receiver to be appointed by the district court for the Forty-Fourth judicial district of Texas, and did not appeal therefrom; that on October 8, 1932, the holders of more than one-fourth of the bonds, in accordance with the terms of the instrument, requested the corporate trustee and the individual trustee to declare the principal and interest of all bonds due, and in compliance with the request they did do so; that·it is for the best interest of all concerned that all of the properties conveyed in the deed of trust and in the lease assignment be sold as an entirety as one parcel as contemplated by the deed of trust and lease assignment; that the lien of the deed of trust and bond indenture and the lien of the assignment constitute a valid first and superior lien upon the property therein described, superior to the liens or claims of the defendants; that the making of the bonds payable in New Orleans was not done with the intent to evade the usury laws of Texas, and the transfer of the bonds was a sale not in violation of the usury laws of the state of Texas or the state of Louisiana, and the defendant Lubbock Hotel Company and its receiver are not entitled to any offsets or credit on account of usury.

The decree, after providing for and allowing all credits to which the defendants were entitled and fixing the amount due as above, adjudged and decreed a foreclosure for the collection of the sum found due. Finding that the Lubbock Hotel Com-

pany was in receivership and that the property covered by the bonds and mortgage was in the possession of the receiver, it was ordered that complainants may have their judgment certified to the state district court and may make such motions and applications as may be necessary to secure the issuance of order of sale, execution, or other writs to enforce the foreclosure.

Paragraph 18 of the decree directs (1) that the application of the funds arising from the sale should be applied first to the payment of costs, allowances, and disbursements, including the compensation of the officer making the sale; (2) to the payment of a reasonable compensation to the complainants and their attorneys, as provided in the deed of trust; (3) to the payment of the amount due, the surplus, if any, to be paid to the persons who may show themselves entitled to it.

Paragraph 19 provides that, in the event a sale is had under the orders of the state district court, if the proceeds of the sale shall not be sufficient to pay the debt in full, complainants shall have a deficiency judgment for the balance, and may apply to the state district court for execution therefor. Paragraph 20 assesses the costs against the defendants. Paragraph 21 directs the purchaser to pay in cash sufficient to pay the costs and the disbursements in the foreclosure cause, all expenses of the sale, including the compensation of the master, taxes, assessments, and other prior charges, and all expenses, fees, and other charges of complainants and their attorneys. It provides that all questions relating to the amount of compensation, allowances, disbursements, and expenses are reserved by the court for further hearing, and that all payments to be made under this paragraph of the decree shall be hereafter determined by it. It provides that the balance of the purchase price may be paid in cash or by delivering to the special master the first mortgage bonds. It further provides that the special master may accept temporarily on account of the purchase price, instead of bonds and coupons, the certificates of banks or trust companies that it holds and will deliver bonds. Paragraph 23 provides that, if the state district court should refuse to order the foreclosure sale, or if the receivership should be terminated before it may be had, any party may apply to this court for further relief.

While there are many assignments, the substantial points made by the appeal are four: (1) That the court was without power to entertain jurisdiction and should have dismissed the bill, because the property of the hotel company was in the possession of a receiver appointed by the state court; (2) that the court should not have entertained the bill, but should have dismissed it, because the Guaranty Bank & Trust Company which brought it as successor trustee had not been properly selected and was without right to prosecute it; (3) that so much of the decree which reserved jurisdiction over the foreclosure sale, directing how it should be conducted, and how the proceeds of the sale should be applied in payment of all allowances which the court reserved the power to make, was unauthorized, because an invasion of the power and jurisdiction of the state court over the res in its possession; (4) that the trial court erred in rejecting the defense of usury and refusing the relief sought on that score.

The proposition advanced in support of the first point is the familiar one that: "When a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The latter courts, though of concurrent jurisdiction, are without power to render any judgment which invades or disturbs the possession of the property while it is in the custody of the court which has seized it." Wabash Ry. v. Adelbert College, 208 U. S. 38, 28 S. Ct. 182, 187, 52 L. Ed. 379; Bryan v. Speakman (C. C. A.) 53 F.(2d) 463; In re White Star Ref. Co. (State of Texas v. Porter) (C. C. A.) 74 F.(2d) 269. This principle, of especial force when it operates to prevent unseemly conflict between state and federal equity courts, Harkin v. Brundage, 276 U. S. 36, 43, 48 S. Ct. 268, 72 L. Ed. 457; Bryan v. Speakman, supra, does not prevent one entitled to invoke federal jurisdiction from resort to that court to establish there the amount of his debt, and the validity of his mortgage, and to obtain, but not to execute, a decree of foreclosure. Ingersoll v. Coram, 211 U. S. 335, 29 S. Ct. 92, 53 L. Ed. 208; Waterman v. Canal Bank & Trust Co., 215 U. S. 33, 30 S. Ct. 10, 54 L. Ed. 80; Ley & Co. v. Wheat (C. C. A.) 64 F.(2d) 257; Brown v. Crawford (D. C.) 254 F. 146; Equitable Trust Co. v. Denney (C. C. A.) 24 F.(2d) 169.

Article 2310, Rev. Civ. Stats. of Texas (1925), and the decisions of its courts, rec-

ognize and declare that this is so as to receiverships pending in Texas courts. Kirby v. Dilworth & Marshall (Tex. Com. App.) 260 S. W. 152; Eaton v. Whisenant (Tex. Civ. App.) 50 S.W.(2d) 1109; Wright v. Lynskey (Tex. Civ. App.) 285 S. W. 655; Houston Ice & Brewing Co. v. Clint (Tex. Civ. App.) 159 S. W. 409; Paine v. Carpenter, 51 Tex. Civ. App. 191, 111 S. W. 430. The first point is overruled.

■ The second point against the maintenance of the suit that the Guaranty Bank & Trust Company, for want of being properly appointed successor trustee, could not bring it, is, we think, so unsubstantial as to be almost frivolous. The point made here is that the Guaranty Bank & Trust Company was not a trust company of the city of New Orleans, though section 2, article 8, of the bond indenture provides that, should the corporate trusteeship become vacant, a trust company of the city of New Orleans, "if there be such a trust company competent and willing to accept the trust," shall be selected as successor. It was established by the uncontradicted evidence that those authorized by the bond indenture to appoint a successor trustee, before appointing the Guaranty Bank & Trust Company, undertook to secure one of the trust companies in New Orleans to accept as successor trustee, but that all of them declined. Thus the provision of the indenture was literally complied with, and the appointment made literally in accordance with its terms. Besides, the individual trustee who under the provisions of the indenture could exercise all the powers of the corporate trustee, in the event that trustee failed or declined to act, was made a party plaintiff in the suit with the permission of the court and without objection on the part of defendants.

■ The third point against the provisions in the decree undertaking completely to direct and control the foreclosure proceedings to be had in the state court, including the making of the allowances against the proceeds, and in effect reserving jurisdiction to proceed with the foreclosure, if the state court did not, is, we think, well taken. This part of the decree, if given effect, would completely oust the state court of effective possession and jurisdiction over the property in its custody, and make it a mere ministerial agent of the federal court. This cannot be done. Authorities supra. It is a well-settled rule of law, too, that the court having jurisdiction over and possession of a res is the court to fix the fees and charges to which the res is subject. Speakman v. Bryan (C. C. A.) 61 F.(2d) 430; Fanning v. Poe (C. C. A.) 76 F.(2d) 707. We turn now to the fourth point, that the transaction should have been found usurious, and proper offsets and credits made on that account. The claim here is that the transaction was in fact a loan at usurious rates, in that, in addition to charging 6½ per cent. per annum on the amount loaned, the Canal Bank & Trust Company, by paying the Lubbock Hotel Company $300,000 for $325,000 of bonds, exacted a bonus of $25,000, thus obtaining in one year as interest a sum greatly in excess of 10 per cent. per annum; that the contract was in violation of the usury laws of Texas, where appellant claims the contract must in law be considered to have been made; that all of the appearances to the contrary of its having been made in Louisiana are the result of a device to avoid Texas usury laws. Appellees' answers to this claim are: (1) That the transaction evidenced by the bonds was not a loan of money but a sale of securities; that the $25,-000 discount was not interest, but a true concession on the purchase price of the securities; that the Canal Bank & Trust Company bought the bonds as an underwriter, as it had a right to do, at a discount; that the bonds are not affected with usury in either Louisiana or Texas. (2) The contract the bonds evidence was made and was to be performed, not in Texas, but in Louisiana, and it is no defense to the bonds, under its laws, that they were sold for less than their face. (3) Further, if the transaction as to the $25,000 was usurious, under the Louisiana laws, it was so as to the Canal Bank & Trust Company which received it, and not as to the bondholders, and, besides, recovery on account of it is now barred by limitation.

■ We agree with appellees that the transaction was not a loan, but an underwriting and sale of securities, and that there was no usury in it under the laws of either state. We agree with them, too, that the contract was made and to be performed in Louisiana. Usury laws denounce the taking of more for the loan of money than the rate the statute allows. They prevent a lender from obtaining by any device or pretense, more interest than the law permits, whether this takes the form of pre-

tended commissions or bonus, or pay for pretended services. Independent Lbr. Co. v. Bank (Tex. Civ. App.) 299 S. W. 939; Forreston State Bank v. Brooks (Tex. Civ. App.) 51 S.W.(2d) 645; Deming Inv. Co. v. Giddens (Tex. Civ. App.) 41 S.W.(2d) 260; Restatement, Contracts §§ 526–529–533. They do not, however, operate to prevent genuine underwriting transactions in, or sales of, securities at less than par. Tyler Co. v. Branch-Middlekauff Co. (C. C. A.) 20 F.(2d) 504; Medical Arts. Bldg. Co. v. Southern Finance & Dev. Co. (C. C. A.) 29 F.(2d) 969; Miller v. Claridge Manor Co. (D. C.) 14 F.(2d) 859; People's Bank v. Fenwick Sanitarium, 130 La. 723, 58 So. 523, 43 L. R. A. (N. S.) 211, Ann. Cas. 1913C, 1322; Stewart v. G. L. Miller Co., 161 Ga. 919, 132 S. E. 535, 45 A. L. R. 559. In each case the facts determine what has been done and the consequences of that doing. It is a presumption of law that parties to contracts intend them to be legal, rather than illegal, and doubts on that score must be resolved in favor of legality. Walker v. Temple Tr. Co. (Tex. Civ. App.) 60 S.W.(2d) 826. This principle is affirmed in Walker v. Temple Tr. Co. (Tex. Com. App.) 80 S.W.(2d) 935 and a series of other cases involving usury questions just decided by the Supreme Court of Texas. Lincoln Life Ins. Co. v. Anderson (Tex. Com. App.) 80 S.W.(2d) 294; Jennings v. Texas Farm Mtg. Co. (Tex. Com. App.) 80 S.W.(2d) 931; Commerce Trust Co. v. Best (Tex. Com. App.) 80 S.W.(2d) 942; Manning v. Christian (Tex. Com. App.) 81 S.W.(2d) 54, and others.

While in the course of the negotiations for the sale of the bonds the transaction was sometimes referred to as a loan, this had reference only to its general nature, that the Lubbock Hotel Company was obtaining money for its uses by the sale of its securities. All along it was understood that the transaction was really an underwriting, in which the Canal Bank & Trust Company was purchasing the securities for resale. It is not the purpose nor is it the effect of usury laws to strike down market transactions like this, where one desiring to raise money by the sale of securities sells them at a discount. Authorities supra.

But appellant would be no better off if the transaction was construed to be a loan, for it is perfectly clear that the bonds were Louisiana contracts, made, issued, and to be performed there, George v. Smith & Sons (C. C. A.) 250 F. 41; Chas. B. Seeman v. Phila. Warehouse Co., 274 U. S. 403, 47 S. Ct. 626, 71 L. Ed. 1123; Brierley v. Commercial Credit Co. (D. C.) 43 F.(2d) 724; and that under its laws they are valid contracts in the hands of the holders for their full amount, Nelsen & Co. v. Rodriguez, 172 La. 14, 133 So. 347.

The Texas case appellant invokes, Bldg. & Loan Ass'n v. Griffin, 90 Tex. 480, 39 S. W. 656, as holding that all contracts affecting property in Texas, if within its usury laws, will be regarded as made and to be performed there, despite the agreement of the parties to the contrary, was a special case on its facts. It merely held under the facts of that case that a Texas court would reject as untrue, and as merely a part of an usurious device, the provision of the contract that it was made and to be performed, not in Texas, but in another state, when every fact and circumstance in the case showed that this was not so. It does not purport to lay down as a general rule that good-faith contracts for money which would be usurious under Texas laws if made and to be performed there will, merely because they are secured by liens on Texas property, be held invalid in suits in Texas courts, though valid in the state of the making or of the performance of the contract. It is well settled that the general rule in both state and federal courts is to the contrary of this. Seeman v. Phila. Warehouse Co., supra. § 27, R. C. L. 60, pp. 256–258; Jones on Mortgages (8th Ed.) § 808; 66 C. J. § 20, p. 150; 5 R. C. L. 982; George v. Smith, supra; Dugan v. Lewis, 79 Tex. 246, 14 S. W. 1024, 12 L. R. A. 93, 23 Am. St. Rep. 332; Bullard v. Thompson, 35 Tex. 313; Connor v. Donnell, 55 Tex. 167.

The decree will be modified by striking from it all of the provisions of paragraphs 18 and 21 which undertake to direct and control the sale proceedings in the state court, including the making of allowances therefor and their charging against the proceeds of the sale, and, as modified, will be affirmed.