**LAFAYETTE ROYALE APARTMENTS, INC., Appellant,**

v.

**MEADOW BROOK NATIONAL BANK, Appellee.**

No. 25117.

United States Court of Appeals
Fifth Circuit.

June 26, 1968.

Bob F. Wright, Domengeaux, Wright & Bienvenu, Lafayette, La., for appellant.

D. Douglas Howard, Jerry A. Brown, Monroe & Lemann, New Orleans, La., for appellee.

Before AINSWORTH and SIMPSON, Circuit Judges, and SINGLETON, District Judge.

AINSWORTH, Circuit Judge:

In this Louisiana diversity suit on a promissory note secured by mortgage on real property, judgment was rendered by the District Court in favor of the mortgagee, Meadow Brook National Bank, against mortgagor Lafayette Royale Apartments, Inc., and foreclosure of the mortgage was ordered. Appellant Lafayette Royale did not supersede the judgment, the mortgaged property was sold by the United States Marshal at public sale, and the sale has been confirmed by the Court.

Lafayette Royale Apartments, Inc. was incorporated for the purpose of constructing an apartment building in Lafayette Parish, Louisiana. The corporation by use of the services of a mortgage broker, American Mortgage Corporation, secured a commitment letter dated November 25, 1963 from Meadow Brook National Bank to purchase a first mortgage loan on the completed apartment building. The amount of the mortgage was to be the principal sum of $1,050,000 which was to be purchased at 95 per cent of par (i. e. the sum of $997,500) and the mortgage note was to bear interest at the rate of 8 per cent per annum, to be secured by first mortgage on the apartment property. On the basis of the letter of commitment the National Bank of Commerce in New Orleans agreed to furnish interim or construction financing. On January 10, 1964, the note and collateral mortgage sued on were executed by Lafayette Royale, but prior thereto, the documents were submitted to Meadow Brook for approval as to form. On January 9, 1964, Meadow Brook wrote the National Bank of Commerce that its commitment to buy the note was irrevocable and the note would be purchased when the conditions of the commitment letter were fulfilled.

The mortgage note was pledged to National Bank of Commerce to secure a series of hand notes for construction funds advanced from time to time, the first funds being advanced on January 10, 1964. When the building was completed the National Bank of Commerce had advanced the total sum of $855,000.

The apartment building was to have been completed by November 25, 1964, and the first monthly installment on the $1,050,000 mortgage note was due on October 25, 1964. But because the apartment building had not been completed in time, Lafayette Royale obtained extensions on the commitment and note. Thereafter, on June 24, 1965, the National Bank of Commerce assigned and sold (by written notarial act) the $1,050,000 note and mortgage, without recourse and without warranty, to Meadow Brook for the originally agreed sum of $997,500. National Bank of Commerce disbursed the funds, paying itself $855,000 which it had advanced for interim construction and disbursed the balance of $142,500 at the direction of Lafayette Royale for its account to parties directed by said corporation.

On July 13, 1965, Lafayette Royale, through its President, Louis C. Cadenhead, executed a notarial instrument amending the note and mortgage to add an acceleration clause in clear and unequivocal language, and to clarify language as to prepayment privileges. The first payment due on the $1,050,000 note (after prior extensions had been granted) was July 24, 1965, but Lafayette Royale failed to make payment and Meadow Brook demanded payment of the entire principal amount of the note with interest and attorney's fees, in accordance with the terms of the mortgage.

Meadow Brook then instituted foreclosure proceedings in Louisiana state courts in Lafayette Parish by executory process,[1] but because of defects in the authentic form of the instruments, the State Court dismissed the executory pro-

---

1. As provided by Louisiana Code of Civil Procedure, Article 2631:
   "Executory proceedings are those which are used to effect the seizure and sale of property, without previous citation and judgment, to enforce a mortgage or privilege thereon evidenced by an authentic act importing a confession of judgment, and in other cases allowed by law."

ceedings, and the bank's appeal was dismissed because the present proceedings in the Federal District Court had been filed in the meanwhile. Lafayette Royale assigns as error the holding of the Trial Judge: (1) that the acceleration clause of July 13, 1965 was valid, and (2) that the loan was not usurious.

## I.

### THE ALLEGED INVALIDITY OF THE ACCELERATION CLAUSE

When the original collateral mortgage and note were executed on January 10, 1964, Louis C. Cadenhead, President of Lafayette Royale, was duly authorized by resolution of the Board of Directors of Lafayette Royale (copy of which was attached to the mortgage instrument) to execute the note and mortgage with the usual and customary clauses, and was further authorized "to do and perform any and all such acts and to sign any and all such agreements, obligations and pledges, trust receipts, mortgages or other instruments in writing, necessary, proper or required by said bank or banks, or any other lender, for their protection in their dealings with this Corporation."

■ When the amendment to the note and mortgage was executed on July 13, 1965 by Lafayette Royale through Mr. Cadenhead, its President, there was no accompanying specific resolution of the Board of Directors of the corporation. The Trial Judge found as a fact that the parties intended that the note and mortgage contain an acceleration clause by which failure to pay any monthly installment would, at the option of the holder of the note, mature the entire principal indebtedness plus interest and attorney's

fees; that the amendment of July 13, 1965 was, therefore, a clarification of the original note and mortgage and was executed to add a clause inadvertently omitted in the original documents; that Mr. Cadenhead, who executed the amendment, fully understood its meaning and legal significance and was fully authorized to execute it on behalf of the corporation by virtue of the prior resolution which was attached to the original mortgage of January 10, 1964. Accordingly, the District Court believed that no new or additional consideration was necessary under Louisiana law, La.Civil Code Art. 1901, Dalgarn v. New Orleans Land Co., 162 La. 891, 111 So. 271 (1927), and pointed out also that both Mr. Cadenhead and Mr. Lafargue (Vice President of Lafayette Royale) were present at the execution of the notarial instrument of amendment, that together they owned 80 per cent of the stock of the corporation, and were fully cognizant of what was being done. The District Court also cited Dawson v. Gondran, 5 Cir., 1924, 296 F. 478, to the effect that the original mortgage in the present case actually contained an acceleration clause though it was inexpertly drawn.

■ We see no reason to disturb the findings of fact of the District Judge, which are not clearly erroneous. Rule 52(a), Fed.R.Civ.P. The original resolution of the Board of Directors of Lafayette Royale was sufficiently broad to authorize execution by its President of the subsequent amendment to the note and mortgage.[2] Therefore, the original consideration for the execution of the note and mortgage was sufficient for the execution of the amendment thereto.[3]

2. On two prior occasions when extensions of time to begin monthly payments on the mortgage note were agreed to, Mr. Cadenhead, President of the company, appeared and executed the notarial instruments without additional specific authority of the Board of Directors of Lafayette Royale.

3. We find no merit in appellant's argument that the mortgage contained a forbidden

confession of judgment clause forbidden by the Louisiana Constitution of 1921, Art. 7, § 44. That provision states that confessions of judgment are prohibited except for the purpose of executory process. Meadow Brook initiated an executory foreclosure of this mortgage in the Louisiana State Court in Lafayette Parish but when its suit was dismissed for defects in the authentic *form* of the instruments attached to the suit, it then filed

## II.

## THE ALLEGED USURIOUS INTEREST

The District Judge found—and we agree with his findings—that the transaction was not usurious. Meadow Brook did not make a loan to Lafayette Royale but agreed to purchase the Lafayette Royale note at 95 per cent of its face value, which it ultimately did. The testimony of Mr. Lier, Vice President of the National Bank of Commerce, is clear and unequivocal that the transaction between National Bank of Commerce and Meadow Brook is in writing and is that of an assignment and sale. Mr. Lier testified that his bank would not have sold the note to Meadow Brook if Lafayette Royale had been able to obtain financing at a better rate and on better terms from another source. There was no controverting evidence from either Mr. Cadenhead, President of Lafayette Royale, or Mr. Lafargue, its Vice President. Commercial discounting, such as occurred here, is permissible under Louisiana law. La.Civil Code Art. 2924; People's Bank & Trust Co. v. Fenwick Sanitarium, 130 La. 723, 58 So. 523, 43 L.R.A.,N.S., 211 (1912); Medical Arts Bldg. Co. v. Southern Finance & Development Co., 5 Cir., 1929, 29 F.2d 969; Lubbock Hotel Co. v. Guaranty Bank & Trust Co., 5 Cir., 1935, 77 F.2d 152. We do not view the circumstances of the transaction to require a holding that it was usurious. Mayfield v. Nunn, 239 La. 1021, 121 So. 2d 65 (1960), strongly relied upon by appellant, is not apposite, since it did not involve the sale of a note. The evidence is clear and uncontradicted that the instant transaction involved the sale and purchase of a mortgage note rather than a direct loan between Meadow Brook and

the present suit in the Federal Court by ordinary process, not executory process, and did not avail itself of the confession of judgment clause. Therefore, this contention is completely wide of the mark and not pertinent. Incidentally, it was not raised in the pleadings or presented to the Court below and, therefore, is not entitled to consideration by us on appeal.

Lafayette Royale. The transaction was, therefore, not usurious under Louisiana law. See Note, 40 Tulane L.Rev. 452, 456.

Affirmed.

B & G Electric Company v. G. E. Bass & Company, 5 Cir., 1958, 252 F.2d 698.