[6] La. C.C.P. art. 966(A)(2) provides that "[t]he summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action" and that "[t]he procedure is favored and shall be construed to accomplish these ends."
[7] La. C.C.P. art. 966(C)(2) provides that "[f]or good cause shown, the court may order a continuance of the hearing."
[8] The multi-factor test this court has crafted is as follows:
• whether the party was ready to go to trial;
• whether the party indicated what additional discovery was needed;
• whether the party took any steps to conduct additional discovery during the period between the filing of the motion and the hearing on it; and
• whether the discovery issue was raised in the trial court before the entry of the summary judgment.
Bass Partnership v. Fortmayer , 04-1438, p. 10 (La. App. 4 Cir. 3/9/05), 899 So.2d 68, 75 (citing Greenhouse v. C.F. Kenner Associates Ltd. Partnership , 98-0496, p. 3 (La. App. 4 Cir. 11/10/98), 723 So.2d 1004, 1006 ); Roadrunner , 17-0040, pp. 11-12, 219 So.3d at 1273 ; St. Pierre Ass'n v. Smith , 17-0228, pp. 11-12 (La. App. 4 Cir. 12/6/17), 234 So.3d 170, 178.
[9] See Whitney Bank v. Garden Gate New Orleans, L.L. C., 17-362, pp. 6-7 (La. App. 5 Cir. 12/27/17), 236 So.3d 774, 781 (observing, in a suit on a promissory note, that "defendants have not shown there are any genuine issues of material fact for which discovery is necessary, and thus, defendants have not shown that a probable injustice has occurred" in denying motion to continue); River Bend Capital, LLC v. Lloyd's of London , 10-1317, p. 5 (La. App. 4 Cir. 4/13/11), 63 So.3d 1092, 1096 (observing that "[f]urther discovery to verify what Lloyd's meant by 'full and final settlement' is unnecessary where the language is clear and unambiguous as here"); Hamilton v. Willis , 09-0370, p. 3 (La. App. 4 Cir. 11/4/09), 24 So.3d 946, 948 (observing that "[a]dditional discovery cannot change the motorsports exclusion, which we find to be clear and unambiguous and not leading to absurd consequences"); Orleans Par. Sch. Bd. v. Lexington Ins. Co. , 12-1686, p. 30 (La. App. 4 Cir. 6/5/13), 118 So.3d 1203, 1223 (observing that "[w]hen the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent (La. C.C. art. 2046 ); and additional discovery cannot change the result").
[10] As a commentator has observed, "[t]he general Louisiana summary judgment procedure is taken from the federal procedure, and the jurisprudence under the federal procedure may be considered in applying the Louisiana procedure." 1 Frank L. Maraist, La. Civ. L. Treatise, Civil Procedure § 6:8 (2d Ed. 2018).
[11] The parties do not dispute that Vista placed the LOC with FNBC as security for the loan and that FNBC failed to exercise its rights under the LOC.
[12] The Contract defines "Collateral" as the LOC.
[13] See La. C.C. art. 1913 (providing that "[a] contract is accessory when it is made to provide security for the performance of an obligation" and that "[w]hen the secured obligation arises from a contract, either between the same or other parties, that contract is the principal contract"); see also La. C.C. art. 3136 (providing that "[s]ecurity is an accessory right established by legislation or contract over property, or an obligation undertaken by a person other than the principal obligor, to secure performance of an obligation. It is accessory to the obligation it secures and is transferred with the obligation without a special provision to that effect").
[14] La. C.C.P. art. 5152 provides that "[w]hen a surety is sued by the creditor on the suretyship obligation, and the right of discussion has been created by contract between the surety and the creditor, the surety may plead discussion to compel the creditor to obtain and execute a judgment against the principal before executing a judgment against the surety."
[15] See also Hancock v. Bridges , 547 So.2d 1103, 1106 (La. App. 1st Cir. 1989) (citation omitted) (observing that the creditor "can proceed on the principal debt rather than on the security device"); Whitney Nat. Bank v. Jeffers , 573 So.2d 1262, 1266 (La. App. 4th Cir. 1991) (observing that "[t]he pledgee has the legal right to proceed on the pledge or to wait until the maturity of the principal obligation and sue on it, disregarding the pledged property").
[16] See La. C.C. art. 7 (providing that a person may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any derogation of such law is an absolute nullity); La. C.C. art. 2030 (providing that "[a] contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral").
[17] This common practice is termed commercial discounting, which is defined as "the recognized financial practice of buying an existing indebtedness for a price less than its face value. Such a transaction is essentially a sale and has never been considered within the letter or spirit of the usury law." Note, Usury-Prepayment of Promissory Notes-Rates of Unearned Interest, 40 Tul. L.Rev. 452, 456, n. 27 (1966); see Lafayette Royale Apartments, Inc. v. Meadowbrook Nat. Bank , 397 F.2d 378, 381 (5th Cir.1968) (observing that "[t]he evidence is clear and uncontradicted that the instant transaction involved the sale and purchase of a mortgage note rather than a direct loan between Meadow Brook and Lafayette Royale" and holding that "the transaction was not usurious under Louisiana law"); see also Matter of Executive Office Centers, Inc. , 96 B.R. 642, 648-49 (Bankr. E.D. La.1988) (citing Budget Plan of Baton Rouge, Inc. v. Talbert , 276 So.2d 297 (La.1973) ; Lubbock Hotel Co. v. Guaranty Bank & Trust Co. , 77 F.2d 152 (5th Cir.1935) ) (observing that "[c]ommercial loan discounting facilitates commerce by providing a means of raising capital through the sale of debt instruments at a discount" and that "[t]he Louisiana legislature, as early as 1856, recognized the desirability of this commercial practice by excepting loan discounting from certain areas of pervasive legal, economic and social import, such as usury").
[18] In Westover , the court noted OCGA § 7-4-18(a) provides that "[a]ny person, company, or corporation who shall reserve, charge, or take for any loan or advance of money ... any rate of interest greater than 5 percent per month, either directly or indirectly, by way of commission for advances, discount, exchange, or the purchase of salary or wages; by notarial or other fees; or by any contract, contrivance, or device whatsoever shall be guilty of a misdemeanor." 222 Ga.App. at 526, 474 S.E.2d at 719.
[19] See also Schmitt v. Matthews , 12 Wash.App. 654, 663, 531 P.2d 309, 314 (1975) (quoting Palmer v. Stevens-Norton, Inc. , 75 Wash.2d 155, 158, 449 P.2d 689, 691 (1969), which observed that "[w]hether a note is usurious depends entirely on what a borrower is required to pay for the use of the borrowed money and does not depend on what return a bona fide purchaser for value seeks to realize on his investment").
[20] Vista seeks appellate review of not only the final judgment granting SBN's motion for summary judgment, but also the interlocutory ruling denying its motion for new trial. "[An] abuse of discretion standard applies regardless which ground-peremptory or discretionary-the new trial motion is based upon." Autin v. Voronkova , 15-0407, p. 4 (La. App. 4 Cir. 10/21/15), 177 So.3d 1067, 1070 (citations omitted). For the same reasons expressed in analyzing the motion for summary judgment, we find no abuse of discretion in denying the motion for new trial.
--------