187 So.2d 178 (1966)
PLAUCHE-LOCKE SECURITIES, INC., Plaintiff and Appellee,
v.
George B. JOHNSON, Defendant and Appellant.
No. 1713.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1966.
*179 Edward K. Alexander, DeQuincy, for defendant-appellant.
Plauche & Plauche, by Thomas W. Sanders, Lake Charles, for plaintiff-appellee.
Before CULPEPPER, TATE and HOOD, JJ.
HOOD, Judge.
Plaintiff, Plauche-Locke Securities, Inc., sues George B. Johnson for a deficiency judgment in the amount of $2,677.84. Judgment was rendered by the trial court in favor of plaintiff for the amount claimed, and defendant appeals.
Defendant Johnson purchased a used automobile in March, 1964, and he financed the purchase price by means of a loan from plaintiff. As evidence of this loan, he executed a promissory note in favor of plaintiff for the principal sum of $2,931.28, payable in monthly installments, the payment of this note being secured by a chattel mortgage covering and affecting the automobile.
Johnson defaulted in the payment of the note after two monthly payments had been made. Plaintiff then, pursuant to the provisions of the note, declared the entire indebtedness due and instituted proceedings by executory process foreclosing on the mortgaged automobile. The automobile was seized and sold at public sale under these proceedings, and after some competitive bidding it brought the sum of $1200.00 at that sale. Plaintiff then instituted this action for a deficiency judgment, claiming the total amount of principal, interest and attorney's fees, subject to a credit for the payments which had been made and for the amount of the proceeds of the public sale. Defendant filed exceptions of no right or no cause of action and an answer. The exceptions were referred to the merits, and after the trial judgment was rendered in favor of plaintiff for the deficiency claimed.
Defendant contends that the mortgaged automobile was sold without the benefit of appraisement, that under the provisions of LSA-C.C.P. Article 2771 and LSA-R.S. 13:4106 the debt thus stands fully satisfied and discharged, and that plaintiff is not entitled to obtain a judgment for the deficiency on the debt.
The Deficiency Judgment Act (LSA-R.S. 13:4106) provides, in part, that:
"If a mortgagee or other creditor takes advantage of a waiver of appraisement of his property, movable, immovable, or both, by a debtor, and the proceeds of the judicial sale thereof are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor. The mortgagee or other creditor shall not have a right thereafter to proceed against the debtor or any of his other property for such deficiency, * *."
LSA-C.C.P. Article 2771, provides that a creditor may obtain a deficiency judgment after the distribution of the proceeds of a judicial sale "only if the property has been sold under the executory proceeding after appraisal in accordance with the provisions of Article 2723." Article 2723 provides that unless appraisal has been waived, the property *180 seized "must be appraised in accordance with law."
The manner of making an appraisal of property for public sale is set out in LSA-R.S. 13:4365, as follows:
"The appraisers shall take an oath to make a true and just appraisement of the property. If the appraisers cannot agree, the sheriff shall appoint a third appraiser, who shall also be sworn, and whose decision shall be final. The property seized must be appraised with such minuteness that it can be sold together or separately. The appraisers shall reduce their appraisement to writing, sign it, and deliver it to the sheriff."
In the foreclosure proceeding by executory process which was instituted by plaintiff here, the sheriff timely served a written notice on the defendant, directing him to name an appraiser to value the property and to notify the sheriff of his appointment twenty-four hours prior to the time of the sale, all as required by LSA-R.S. 13:4363. At the time appointed for making the appraisal, Jack Twachtman, the appraiser appointed by plaintiff, appeared in the office of the sheriff for the purpose of making this appraisal, and while there he filled in the blanks on a form of appraisal, showing the appraised value of the automobile to be $1200.00, and he thereupon signed this form in the presence of a deputy sheriff.
The defendant neglected to appoint an appraiser or to notify the sheriff within the time designated in the above mentioned notice, so pursuant to LSA-R.S. 13:4364, the sheriff proceeded to appoint Bryan Forrest Gill as the appraiser for the defendant. This appraiser then appeared before the same deputy sheriff and signed the form of appraisal which previously had been completed and signed by Mr. Twachtman. The deputy sheriff then affixed his signature to this form. The form of appraisal executed by these parties reads as follows:
 "We, Jack Twatchman (sic) and Bryan Forrest Gill being duly appointed
 and sworn to make an appraisement of the following described property,
 situated in the Parish of Calcasieu, State of Louisiana, seized upon a writ
 of Seizure and Sale at the suit of Plauche-Locke Securities, Inc. v. George
 B. Johnson, No. 62,343 do appraise the same as follows, to-wit: One 1961
 Used Ford Thunderbird, 2 door, Hardtop, Serial No. 1Y71Zi63682. Appraised
 $1,200.00.
 s/ Jack Twachtman1425 W. Sale Rd.|
 Plaintiff |
 } Appraisers
 s/ Bryan Forest Gill |
 |
 Defendant
 Sworn to and subscribed before me, at Lake Charles, Calcasieu Parish,
 Louisiana, this 18th day of August, A.D. 1964.
 s/ J. F. Gill
 Deputy Sheriff of Calcasieu
 Parish, La."
Both of the appraisers testified that in making this appraisal no formal oath was administered to them, that is, neither of them was required to raise his hand or to make any statement to the effect that he was swearing or taking an oath to make a fair and just appraisement of the property. Defendant contends that the failure to formally administer such an oath renders the appraisal null and void.
Although no formal oath to that effect was taken, the form of appraisal which the appraisers signed recites that they had been *181 "duly appointed and sworn to make an appraisement," and the deputy sheriff, before whom the signatures were affixed, certified that the appraisal was "Sworn to and subscribed" before him. Plaintiff points out that there are no statutory provisions in Louisiana setting out a formal procedure or ritual for the administration of an oath of this kind, and it contends that the affixing of signatures of the appraisers to the form of appraisal, containing recitals to the effect that the signers were being sworn, constitutes a sufficient compliance with the requirements of LSA-R.S. 13:4365.
In M. Marx Sons v. Cooper, La.App. 1 Cir., 63 So.2d 883, an oath was administered to the appraisers, but the deputy sheriff failed to attest that they had signed the oath in his presence. In holding that the appraisal was valid, our brothers of the First Circuit said:
"* * * While it might be true that under the Deficiency Judgment Act, [LSA-] Revised Statutes, Title 13, Section 4106, that where the Court is convinced that the judgment creditor has tried to circumvent the law and causes an unfair and unjust appraisement of the property to be made, it should hold that the sale was without benefit of appraisement, yet, on the other hand, where there has been a substantial compliance with the law in regard to the appraisement and a just and fair appraisement has been made, as in this case then certainly the court should not hold that the sale was without benefit of appraisement for highly technical reasons, as presented in this case." (Emphasis added.)
In Accardo v. Dimiceli, 226 La. 435, 76 So.2d 521, plaintiff sought to annul a partition judgment, one of the grounds being that the appraisers did not take the oath required by law. Our Supreme Court held that the neglect of the court-appointed appraisers to take the required oath was not a vice of form affecting the validity of the judgment of partition.
We think the applicable rule is correctly stated in 67 C.J.S. Oaths and Affirmations §6, page 8, as follows:
"Some unequivocal act, by which a person consciously takes on himself the obligation of an oath, is necessary to make a valid oath and to distinguish between an oath and a bare assertion or unsworn statement. While the uplifting of the hand is formal enough to make an oath legal and binding, the holding up of the hand is not necessary; it is sufficient if the person swearing does some corporal act after having been called on to do so and after his attention has been directed to the necessity of swearing to his statement, or if both the person swearing and the officer understand that what is done is proper for the administration of the oath and all that is necessary to complete the act of swearing."
In the instant suit both of the persons who were appointed and served as appraisers had served as such on many prior occasions. Both were thoroughly familiar with the procedures which were employed in making such appraisals in connection with the public sale of property, one of the appraisers being a practicing attorney. We are convinced that both of them were aware of the significance of their acts in affixing their signatures to the form of appraisal, and since the document which they signed recited that it was "Sworn to" before the deputy sheriff, we think they clearly understood that in affixing their signatures to the form of appraisal they were taking the oath required by LSA-R.S. 13:4365. No fraud or bad faith had been shown, and as we will point out more fully later, we think a just and fair appraisal was made.
In view of these circumstances, we conclude that there has been a substantial and adequate compliance with the provisions of LSA-R.S. 13:4365, insofar as that statute requires that "[t]he appraisers shall take an oath to make a true and just appraisement of the property."
*182 Defendant further contends that the appraisal was void because the appraisers were not qualified to determine the value of an automobile, that they did not discuss the matter with each other prior to arriving at a value, that one of the appraisers was an employee of plaintiff and thus was not a "disinterested person," and that the other appraiser did not actually see or inspect the car which was appraised.
Twachtman, one of the appraisers, has appraised an average of thirty or forty automobiles per years for the past four years in connection with public or judicial sales. He was familiar with, and in making these appraisals he used, the "NADA Blue Book," which is a commonly accepted guide as to the current value of used cars. He also was familiar with the repair work which would be required in order to make a used car saleable. He personally inspected the defendant's car in this instance, he considered its NADA Blue Book value and he estimated the cost of the repairs which would be required to make it marketable. Gill, the other appraiser, has appraised an average of about five automobiles per week for the past seven years in connection with judicial sales. He, also, considers the NADA Blue Book value of each car which he appraises and he adjusts that value up or down depending upon the condition of the car. In this case, he did not actually inspect defendant's car and he does not have a specific recollection of the circumstances of this appraisal, but he thinks this is one of the many instances when he was informed by notes left by Twachtman of the repairs which were needed to make the car saleable, and with this information he adjusted the NADA Blue Book value. With the experience which these appraisers have had in making such appraisals, we feel that both of them were qualified to make a true and just appraisement of defendant's car.
There is no requirement in law that the appraisers be present at the same time and place and that they discuss the matter with each other before making an appraisement for a judicial sale. Neither is there any requirement that the appraisers be "disinterested persons," as contended by defendant. Actually, we think the law contemplates that even a party to the suit may act as an appraiser, since it provides that "a party to an action or proceeding who acts as an appraiser is not entitled to a fee." See LSA-R.S. 13:4366. The appraisal is not invalid, therefore, because one of the appraisers was an employee of plaintiff.
For these reasons, we find no merit to the above arguments that the appraisal made in this instance is null.
Finally, defendant argues that the appraisement was not true and just. The evidence shows that the NADA Blue Book value of defendant's car at the time of the appraisal was $1690.00. Twachtman determined that it needed a number of repairs, and in his testimony he listed the specific items of repair which he felt must be made. His statements as to the need of these repairs is confirmed by defendant himself, who testified that the car had bad tires and a number of mechanical defects which he had been trying unsuccessfully to get his seller to repair. Twachtman estimated that these repairs would cost between $400.00 and $500.00, and thus he and Gill both valued the car at $1200.00. The car was purchased by plaintiff at the sale, and the needed repairs were made later at an actual cost of $356.61. At the sale, the bidding started at two-thirds of the appraised value. There was competition in the bidding, and the car was finally sold for the exact amount of the appraisal. All of these facts indicate to us that the appraisement was fair and just.
In our opinion, the trial judge correctly held that the appraisement made in connection with the judicial sale of defendant's automobile was valid, that the judicial sale of defendant's car was made "with appraisement," and that plaintiff is entitled to recover judgment against defendant for the deficiency.
*183 For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.