200 So.2d 717 (1966)
CONSOLIDATION LOANS, INC.
v.
Russell A. GUERCIO et ux.
No. 6842.
Court of Appeal of Louisiana, First Circuit.
December 28, 1966.
On Rehearing June 30, 1967.
*718 Richard C. Cadwallader, Baton Rouge, for appellant.
Ralph Brewer, Baton Rouge, for appellee.
Before LANDRY, ELLIS and BAILES, JJ.
*719 LANDRY, Judge.
Defendant, Helen K. Guercio (appellant), judicially separated from defendant, Russell A. Guercio, has taken this appeal from the decree of the trial court granting a deficiency judgment in solido against appellant and her said husband, in favor of plaintiff, Consolidation Loans, Inc. (appellee), following foreclosure by executory process of a mortgage granted by defendants jointly. Respondent Russell A. Guercio has not appealed.
We find that the judgment of the trial court must be reversed and set aside because of the nullity of the executory proceeding previously had between the parties to the present litigation.
In effect appellant herein maintains the executory proceeding, pursuant to which the mortgaged property was seized and sold, was null and void and therefore cannot serve as the basis of an action for deficiency judgment against her. Appellant's contentions in this regard may be summarized as follows: (1) She was not served with the demand for payment which, according to LSA-C.C.P. Article 2639, must precede by three days issuance of the writ of seizure and sale indispensable to an executory proceeding unless waived by the debtor; (2) Appellant was not personally bound for the obligation considering the indebtedness in question was contracted during the life of the community of acquets and gains which existed between defendants as husband and wife; (3) The note and mortgage sued upon were executed by appellant solely as agent for the aforesaid community without express intent to personally obligate herself thereon; and (4) The appraisal made of the property in the course of the prior executory proceeding was patently erroneous and totally unrepresentative of the fair value of the property at the time of sale.
Except as hereinafter otherwise noted the facts attending this lawsuit are not in serious dispute.
Under date of April 30, 1963, defendants jointly executed and negotiated to plaintiff, a certain promissory note in the sum of $4,500.00, payable to the order of themselves and by them endorsed in blank, payable in monthly installments in the sum of $75.00 and stipulating to bear interest at the rate of 8% per annum. Said note was secured by a second mortgage signed by both defendants covering Lot 346, Brooks-town Place, East Baton Rouge Parish, with all buildings and improvements thereon.
Plaintiff, alleging an unpaid balance due on the aforesaid note in the sum of $3,825.-00, with interest at 8% from February 10, 1964, until paid, proceeded via executory process against defendants to foreclose the mortgage and realize the aforesaid amount due on the note, together with 25% additional as attorney's fees, and costs, as provided for in the note in question.
The mortgaged property was sold to plaintiff for the sum of $3,952.51, with appraisal, which amount was sufficient to pay the prior mortgage and all costs of the executory proceeding and leave a remainder of $15.00 to be credited to plaintiff's claim.
Neither appellant nor her husband appeared or filed any answer or exception in the executory proceeding. In this present action, however, both defendants filed numerous exceptions which were overruled by the trial court and none of which are urged by appellant on this appeal.
We find that we must first dispose of the question of appellant's alleged lack of liability on the note predicated on the ground a wife is not liable for the debts of the community unless she expressly and unequivocally assumes such obligation.
Appellant testified that whereas she voluntarily signed the note and mortgage in question, she did so only as a wife joining in an act to enable her husband to borrow money for a community purpose, in this case the purchase of a home in which the couple was to live. On this ground, relying *720 on O'Dowd v. McNeill, La.App., 110 So.2d 755; Rouchon v. Rocamora, La.App., 84 So.2d 873; Wilson & Gandy v. Cummings, La.App., 150 So. 436; D. H. Holmes Co. v. Van Ryper, La.App., 173 So. 584 and Alpha v. Aucoin, La.App., 167 So. 835. Counsel for appellant maintains appellant was not personally liable on the note presently in suit. We have considered each of the cited authorities and find none in point. Counsel for appellant does indeed correctly argue the general rule to be that, despite enactment of the so-called "emancipation statutes" contained in LSA-R.S. 9:101 et seq., a married woman nevertheless does not become liable for a community obligation unless she expressly and specifically so obligates herself. In each of the cases cited by counsel for appellant, wherein the wife was exonerated from liability, it appears the suit was either an action on an open account or suit for judgment for attorney's fees for professional services rendered the wife incident to suit for either divorce or separation.
In a suit on a negotiable promissory note, however, the rule is well established to the contrary. It is settled beyond the peradventure of argument that the wife who joins her husband in the execution of a promissory note and mortgage binds herself personally thereon and may be sued individually for such indebtedness. Howard v. Cardella, 171 La. 921, 132 So. 501; United Life & Accident Ins. Co. v. Haley, 178 La. 63, 150 So. 833; Perdido Finance Co. v. Falgout, La.App., 77 So.2d 896; Friendly Loans, Inc. v. Morris, La.App., 142 So.2d 810.
In the instant case the wife makes no claim of fraud, duress, intimidation or deceit attending her signing of the note and mortgage in question. She concedes her voluntary execution of these instruments and further concedes the veracity of plaintiff's allegation to the effect plaintiff is a holder in due course of the instrument sued upon. Under such circumstances appellant is precluded from the contention she had no intention to be personally bound. Friendly Loans, Inc. v. Morris, supra. We hold, therefore, appellant was personally obligated to plaintiff herein on the note in question.
We next consider appellant's claim the executory proceeding was null and void because she was not served with the three day notice of demand for payment required pursuant to LSA-C.C.P. Article 2639. In this regard the record discloses that appellant and her said husband were judicially separated pending this litigation. However, at the time of service of the notice of demand for payment, the couple, while not judicially separated, were nevertheless living separate and apart, the husband occupying the family home and the wife residing with her mother in the latter's home. The jurisprudence is clear that the wife not judicially separated from her husband can have no domicile other than that of her spouse. Dugat v. Markham, 2 La. 29.
Our careful review of the record discloses that whereas the three day notice of demand for payment stipulated by LSA-C.C.P. Article 2639 was personally served upon defendant husband as evidenced by the sheriff's return to that effect, no return showing either personal or domiciliary service of said notice upon appellant is contained in the record. We do note, however, a return indicating domiciliary service on appellant, through defendant husband, of the notice of seizure and sale required upon expiration of three days following service of notice of demand for payment. Said return shows compliance in full with the laws regarding domiciliary service of said notice of seizure and sale upon appellant considering appellant is presumed to have been residing in the home of her said husband when such service was effected. Under such circumstances appellant is assumed to have knowledge of the notice of seizure and sale notwithstanding her complaint her husband, with whom she was not then living, withheld such information from her.
*721 Nevertheless, as previously shown, it is patent on the face of the record that only one notice of demand for payment was served in the executory proceeding, namely, upon defendant husband personally. The question, therefore, is whether one notice of demand for payment in an executory proceeding on a spouse at his domicile can serve as proper domiciliary service on the other spouse.
It appears well settled there can be no legal notice in an executory proceeding in the absence of lawful service thereof by some duly authorized officer. Although no citation in the ordinary sense is required in the foreclosure of a mortgage via executiva, nevertheless the three day preliminary notice or demand for payment required by law is mandatory. LSA-C.C.P. Articles 2639 and 2640. Carrere v. Aucoin, 122 La. 258, 47 So. 598.
The importance of notice to the debtor of demand for payment in a mortgage foreclosure via executiva was long ago recognized in Nash v. Johnson, 9 Rob. 8 (1844), wherein it was declared the primary reason for such notice is to provide the obligee opportunity to pay the indebtedness and thus avoid litigation which is otherwise imminent.
Likewise our jurisprudence appears settled that notice of demand for payment as required by LSA-C.C.P. Article 2639 (formerly C.P. Article 735) is essential to the validity of an order of seizure and sale to enforce payment of a debt. La Plaq Realty v. Vaughan, 209 La. 481, 24 So.2d 870.
While counsel for appellee argues strenuously the record shows service of notice of demand upon appellant through her husband, no evidence to that effect appears in the transcript. We find a notice of demand addressed solely to Mr. Guercio and on the reverse thereof the sheriff's return indicating personal service upon him alone. In essence appellee maintains one notice was served upon the husband individually and the other upon him as agent for appellant, thus representing domiciliary service upon Mrs. Guercio. However, the sheriff's return does not so indicate and the return is the sole basis on which service must be established, parol evidence being inadmissible for such purpose. General Motors Acceptance Corporation v. Guidry, La. App., 177 So.2d 184.
Moreover, the argument that service can be made upon a husband as the legal representative of the wife is without foundation under our law. LSA-C.C.P. Article 1203 provides that when one person is the legal representative of several others, only one citation need be addressed to such representative. It is worthy of note that the provisions of Article 1203, supra, change former Code of Practice Article 182 by establishing the rule that multiple citations are dispensed with only in cases involving legal representatives. Considering the broad scope attributed to the numerous acts designed to relieve women from former legal incapacities (particularly LSA-R.S. 9:103), it can no longer be contended women are in need of legal representatives as are minors and interdicts. Further, LSA-C.C.P. Article 1203 must be interpreted in conjunction with LSA-R.S. 13:3471, Section (3), which provides in essence that service in suits against a married woman must be made upon her, in person or at her domicile, AS IN THE CASE OF ANY OTHER PERSON. (Emphasis by the Court) Consequently, in the absence of an express agency designation by the wife, service of process upon a wife may not be accomplished by service upon her husband based on the theory the husband is the legal representative of his wife by mere operation of law.
We believe the more serious and complex issue in this case is plaintiff's alternative contention that failure to serve appellant with notice of demand for payment does not vitiate the executory proceeding herein concerned. Alternatively, appellee argues *722 the judgment in the executory proceeding may not be collaterally attacked by a party cast therein.
Appellant asserts her right to urge the nullity of the executory proceedings in question is predicated upon the provisions of LSA-C.C.P. Article 2002, the pertinent provisions of which read as follows:
"A final judgment shall be annulled if it is rendered:
* * * * * *
(2) Against a defendant who has not been served with process as required by law and who has not entered a general appearance. * * *.
* * * * * *
Except as otherwise provided in Article 2003, an action to annul a judgment on these grounds may be brought at any time."
LSA-C.C.P. Article 2003 merely provides that a defendant who voluntarily acquiesces in a judgment or is present in the parish at the time of its execution and did not attempt to enjoin its enforcement may not annul the judgment on any ground enumerated in Article 2002, supra.
Appellant further maintains that since the provisions of LSA-C.C.P. Article 2639, requiring service of written demand upon a defendant in an executory proceeding three days prior to issuance of a writ of seizure and sale are mandatory in character, failure to so serve said demand is tantamount to failure to serve such a defendant with process as required by law.
We observe in addition LSA-C.C.P. Articles 1201 and 2640, relative to citation and waiver, which read as follows:
"Art. 1201.
Citation and service thereof are essential in all civil actions except summary and executory proceedings. Without them all proceedings are absolutely null.
The defendant may expressly waive citation and service thereof by any written waiver made part of the record.
"Art. 2640.
Citation is not necessary in an executory proceeding.
The sheriff shall serve upon the defendant the demand for payment provided by Article 2639, unless waived by the debtor as provided therein."
Counsel for appellee cites and relies upon Gumina v. Dupas, La.App., 178 So.2d 291 (rehearing denied September 27, 1965, writ refused November 9, 1965, 248 La. 442, 179 So.2d 430), as authority for the rule that failure to serve the notice of demand required by Article 2639, supra, upon a comaker having no interest in the mortgaged property does not strike an executory proceeding with nullity within the purview of Article 2002, supra.
We have considered Gumina v. Dupas, supra, most carefully and find that it concerned an action to annul a deficiency judgment. We note further the action was instituted by a son who, without interest in the property therein involved, signed as comaker a note and mortgage executed by his parents. As we appreciate the decision, it does indeed, as counsel suggests, hold that the failure to serve the notice of demand required in Article 2639, supra, does not fall within the scope of any of the vices of form alluded to in Article 2002, supra. We base this conclusion on the following language appearing in the Dupas case, supra, at page 295, Vol. 178 So.2d:
"* * * And it is clear that a lack of service of notices of demand and seizure on him in the executory proceeding does not come within the purview of any of the grounds for nullity contained in Article 2002. The grounds for nullity enumerated in that article are exclusive as to vices of form (LSA-C.C.P. Article 2002, Comment (e); Accardo v. Dimiceli, 226 La. 435, 76 So.2d 521), * * *"
*723 We can only view the Gumina decision, supra, as holding in effect that service of the notice of demand called for in Article 2639, supra, is not "process" within the meaning of the term as used in Article 2002, supra. With this conclusion we must respectfully disagree.
Notwithstanding considerable research, we have been unable to find any authority from our own state, either statutory or jurisprudential, defining process. The general rule, however, appears to be that in its broadest sense "process" is the equivalent of procedure whereas its narrower meaning is limited to judicial writs in an action or writings or writs issued from or out of a court and returnable thereto under authority of law. Volume 72 C.J.S. Verbo Process, § 1, (1), Page 981.
The majority rule regarding the definition of "process" is stated in the hereinabove cited section of C.J.S. as follows:
"`Process' and `writ' or `writs' are synonymous in the sense that every writ is a process, and in a narrow sense of the term `process' is limited to judicial writs in an action, or at least to writs or writings issued from or out of a court, under the seal thereof and returnable thereto; but it is not always necessary to construe the term so strictly as to limit it to a writ issued by a court in the exercise of its ordinary jurisdiction. The term is sometimes defined as a writ or other formal writing issued by authority of law or by some court, body, or official having authority to issue it; and it is frequently used to designate a means, by writ or otherwise, of acquiring jurisdiction of defendant or his property, or of bringing defendant into, or compelling him to appear in, court to answer.
Meaning of `process' as employed in statutes. As employed in statutes the legal meaning of the word `process' varies according to the context, subject matter, and spirit of the statute in which it occurs. In some jurisdictions codes or statutes variously define `process' as signifying or including all writs, warrants, summonses, and orders of courts of justice or judicial officers, or any writ, declaration, summons, order, or subpoena whereby any action, suit, or proceeding shall be commenced, or which shall be issued in or on any action, suit, or proceeding."
It must be conceded that LSA-C.C.P. Articles 1201 and 2640 dispense with citation in an executory proceeding. The foregoing codal provisions must, however, be interpreted together with LSA-C.C.P. Article 2639, which appears mandatory in requiring the giving of the three day notice of demand for payment prior to seizure and sale. Likewise, the second paragraph of LSA-C.C.P. 2640 appears equally mandatory in the direction that the "sheriff shall serve" the demand for payment required by Article 2639. We note further the redactor's comment under Article 2640 to the effect that in an executory proceeding it is not necessary that a copy of plaintiff's petition and of the order of the court rendered thereon be served upon the defendant. All of the foregoing considered, we conclude that insofar as Articles 1201 and 2640, supra, dispense with the necessity of citation in an executory proceeding, they merely eliminate the necessity of service of the plaintiff's petition and the order of the court rendered thereon directing that the executory proceeding take place. Such procedure is thoroughly consistent with the confession of judgment executed by the debtor.
In our judgment the required service of notice of demand for payment contained in LSA-C.C.P. Article 2639 is "process" within the meaning of the term as found in LSA-C.C.P. Article 2002. In cases of this character, citation or service of the petition being unnecessary, the action against the debtor is in effect initiated by service of the demand for payment which is the sole and only method provided by which the debtor is apprised of the filing of the suit against him. Service of the notice of demand *724 for payment therefore is the sole means through which knowledge of the demand is communicated to the debtor and by virtue of which he is afforded opportunity to pay the debt and avoid the litigation which is otherwise inevitable.
It appears that from earliest times the notice of demand for payment, required antecedent to mortgage foreclosure by executory process, has been regarded as a notice of judgment rather than a citation. See Aillet v. Henry, 2 La.Ann. 145, and authorities therein cited. Moreover, until the advent of Gumina v. Dupas, supra, it has been consistently held that the notice of demand in such cases is indispensable to a valid judgment in an executory proceeding. In Birch v. Bates, 22 La.Ann. 198, the rule is thusly stated:
"The notice required in cases of proceedings via executiva, is the notice that an order of seizure and sale has been rendered. This notice is served upon the defendant three days before the seizure is made, in order that he may pay the debt or otherwise satisfy his creditor to prevent his property being seized. The seizure first, and then notice of seizure, does not fulfill the requirements of the law. Where recourse is had to this summary mode of enforcing the payment of obligations, it has been frequently held that the plaintiff should be strictly required to comply with all the legal formalities under pain of nullity. (Dufour v. Camfranc) 11 M [art. (OS)] 607 (13 Am.Dec. 360); (McDonough v. Gravier's Curator) 9 La. [531] 542; (Arceneaux v. His creditors) 6 La. 6; C.P. article 735.
There being then no notice to the defendant, the proceedings had after the order was issued, are necessarily illegal and without effect."
Birch v. Bates, supra, merely followed the jurisprudence established in Lowry v. Erwin, 6 Rob. 192. In turn, Birch v. Bates, supra, has since been followed in Ring v. Schilkoffsky, 158 La. 361, 104 So. 115.
The reason a sale under executory process is struck with nullity in the event of failure to serve the required demand for payment is succinctly stated in the following language taken from Lowry v. Erwin, supra, and appearing at page 114, Vol. 6 Rob.:
"It is well settled, in our jurisprudence, that in forced alienations of property, there must be a reasonable diligence and a compliance with the forms of the law, under the penalty of nullity. When a party resorts to the summary and more severe remedies allowed by law, he is then held to a stricter compliance with every legal formality; and the executory process of seizure and sale, may be considered as one of severity. It is obtained ex parte, and all the proceedings under it are to be scrutinized closely. It necessarily follows, that if the law has not been complied with, the property is not transferred, and the purchaser acquires no title. (Dufour v. Camfranc) 11 Mart. 607 (13 Am.Dec. 360). (McDonough v. Gravier's Curator) 9 La. 542. (Grant v. Walden) 6 La. 623. It is equally well settled, that to support a sale made by a Sheriff or Marshal, under an execution or order of seizure and sale, there must be a valid judgment rendered by a court of competent jurisdiction, without which the title is not divested."
Counsel for appellee equates the instant matter to Gumina v. Dupas, supra, but we find the decision distinguishable on a fundamental issue; in the case at bar appellant is not without interest in the mortgaged property as was the co-obligor in the Dupas case. We believe, however, the only distinction which should be made on the basis of whether the co-obligor did or did not possess an interest in the subject property is the differentiation hereinafter indicated. Moreover, we believe the law and jurisprudence grants any defendant in an executory proceeding, irrespective of his lack of interest in the mortgaged property, the absolute and unqualified right to be served with the notice of demand for payment *725 required prior to the sale of the property. Since his obligation is for the entire amount of the indebtedness, the comaker without interest is subject, in the event of a proper sale, to penalties such as costs and attorney's fees in the event of his failure to pay following proper service of notice of demand for payment. Failure to be served with the notice of demand deprives the comaker of the opportunity to avoid such additional expenses. In addition, service of the notice of demand affords the opportunity to pay pursuant to which the co-obligor becomes subrogated to the rights of the creditor, a valuable right which is denied the co-obligor in the event of the failure to serve upon him the notice of demand.
We agree that the co-obligor without interest has no standing to annul the sale once made as was held in the Dupas case, supra. We disagree, however, with the holding in the Dupas case to the effect the comaker without interest lacks the right to assert the nullity as to him of the executory proceeding in bar of the suit against him for deficiency judgment predicated thereon. Failure of the mortgagee or creditor to make demand upon the co-obligor without interest must be deemed tantamount to release of such debtor from the obligation and indicative of the creditor's intent to seek satisfaction of the debt from the property and its owner alone. This must be so, we believe, because the failure of the mortgagee to serve the demand deprives the comaker without interest of valuable rights and opportunities to which he would otherwise be entitled. In the case at bar appellant, having an interest in the property, is entitled to assert the absolute nullity of the sale. In every instant wherein a person having an interest in the hypothecated property was not served with the required notice or such notice, if given, was defective, the courts have consistently stricken such sale with absolute nullity. See Aillet v. Henry, supra; Birch v. Bates, supra; Ring v. Schilkoffsky, supra; and Andrews v. City Bank of New Orleans, 5 La.Ann. 737.
Declaration of the absolute nullity of the sale as to the owners, however, does not defeat the creditor's claim. In such instances, the sale, though without legal effect, does not release the owner-debtor from the effect of his obligation and the creditor is free to institute a new action pursuant to law.
Under the circumstances obtaining herein, failure to serve appellant with the mandatory notice of demand for payment was a fatal defect vitiating the sale in its entirety. A sale which is null and void cannot serve as the basis of an action for deficiency judgment.
Appellee alternatively contends that its judgment obtained in the previous executory proceeding may not be collaterally attacked. We find this argument without foundation. The concluding paragraph of LSA-C.C.P. Article 2002 expressly states that an action to annul a judgment on any of the grounds contained in said article may be brought at any time except as otherwise provided in Article 2003. We find the present case does not fall within one of the exceptions set forth in LSA-C.C.P. Article 2003. Moreover, we note that in Footnote (e) of the Official Revision Comments appearing under Article 2002, supra, it is expressly stated the article adopts prior jurisprudence to the effect that an action of nullity based on any of the grounds enumerated may be raised collaterally and at any time, which observation is followed by the citation of numerous authorities so holding.
The reasons herein expressed obviate the necessity of passing upon appellant's remaining contentions.
Accordingly, it is ordered, adjudged and decreed that the judgment of the trial court be reversed and set aside and judgment rendered herein in favor of appellant, Helen Guercio, and against appellee, Consolidation Loans, Inc., annulling, cancelling and setting aside that certain order for executory process issued by the Honorable Nineteenth *726 Judicial Court on April 2, 1964, and the Sheriff Sale held pursuant thereto on May 27, 1964, wherein plaintiff, Consolidation Loans, Inc., became the purchaser of that certain lot of ground situated in the Parish of East Baton Rouge and more particularly described as Lot 346, Brookstown Place Subdivision, as shown on the official plat of said subdivision on file and of record in the office of the Clerk and Recorder, East Baton Rouge Parish.
It is further ordered that the judgment of the trial court in favor of plaintiff, Consolidation Loans, Inc., against defendants, Russell A. Guercio and Helen K. Guercio, in solido, in the sum of $3,825.00, together with interest thereon from February 10, 1964, at the rate of 8% per annum, until paid, be and the same is hereby annulled, reversed and set aside; costs of these proceedings to be paid by plaintiff-appellee, Consolidation Loans, Inc.
Reversed and rendered.

ON REHEARING
LANDRY, J.
On application of plaintiff, Consolidation Loans, Inc., (Consolidation), a rehearing was granted in this matter to review the propriety of our original decree declaring the deficiency judgments rendered against defendants, Russell A. Guercio and Helen K. Guercio, void for lack of service of the required three day notice of demand for payment upon defendant Helen K. Guercio prior to seizure and sale of the mortgaged property by executory process.
As pointed out in our initial opinion, despite the vigorous contention of counsel for Consolidation that such service was in fact made, the record then before us contained no evidence of either issuance to or service upon said defendant of such notice.
Following rendition of our prior judgment herein and pending this application for rehearing, this court received from the Nineteenth Judicial District Court a supplemental transcript of trial court proceedings including a three day notice to pay addressed to Mrs. Guercio under date of April 2, 1964, and the Sheriff's return showing domiciliary service thereof upon her on April 3, 1964. The return further reflects service upon Mrs. Guercio at her domicile, 6134 Clayton Street, by leaving the notice in the hands of her husband, Russell A. Guercio.
On the initial appeal of this matter defendant-appellant, Mrs. Guercio, the sole appellant, presented four arguments: (1) Lack of service of the three day notice of demand for payment provided by LSA-C.C. P. Article 2639; (2) Appellant was not bound for the debt inasmuch as the obligation was a community liability; (3) The note and mortgage sued upon were executed by appellant solely as agent for the community of acquets and gains existing between her and her husband and appellant did not intend to be personally bound thereby; and (4) The appraisal of subject property made during the course of the prior executory proceeding was erroneous and totally unrepresentative of the fair value of the property at the time of sale.
The second and third arguments enumerated above were fully considered and disposed of in our initial decree and require no further discussion on this rehearing.
The now disclosed existence of the misplaced notice of demand for payment issued to Mrs. Guercio necessitates reconsideration of the issue concerning the alleged invalidity of the deficiency judgment predicated upon the purported failure to serve Mrs. Guercio with such notice. It is to be clearly understood that since our original decision on this vital issue was based on the absence of such notice from the record and the consequent assumption such notice was not given, our former views on this question are to be considered pure dicta in that the issue decided was moot. Since service of the notice of demand for payment conclusively appears from the record, there can no longer be an issue *727 that the sale was void for lack of such notice.
Counsel for Mrs. Guercio now maintains the notice in question was invalid inasmuch as the domiciliary service shown on the attached sheriff's return was defective because it was not served upon Mrs. Guercio at her "residence" as required by law. In this connection counsel argues the address shown on the return, namely, 6143 Clayton Street, is the address of defendant's former husband, Russell A. Guercio, and that on the date of service on Mrs. Guercio, April 3, 1964, she was living apart from her husband and residing in the home of her mother at another address in Baton Rouge, Louisiana.
The foregoing argument is totally without foundation. Service of process is governed by LSA-R.S. 13:3471, the pertinent portions of which provide as follows:
"§ 3471: Citations and all other legal process, whether issued by the clerk, the sheriff or the constable, shall be served by the sheriffs and constables, as follows:
* * * * * *
(3) In suit against married women, service shall be made in person, or at her domicile, as in the case of any other person.
* * * * * *
(8) Process addressed to any individual or to any of the persons named in subsections 1, 2 and 7, may be made at the domicile of said person, * * * by leaving same in the hands of any person above the age of sixteen years, residing on the premises. * * *"
At the time of the service in question, Mrs. Guercio was not judicially separated from her husband although the couple were then experiencing some marital difficulties.
It is well settled that a married woman not judicially separated from her spouse can have no domicile other than that of her husband. Dugat v. Markham, 2 La. 29. Since Mrs. Guercio's domicile was that of her husband, the domiciliary service made upon her through her husband residing at the matrimonial domicile was sufficient and valid.
Assuming, arguendo, counsel is correct in contending domiciliary service must be made upon a wife not judicially separated from her husband at her actual residence as distinguished from the residence of her husband when the two are not identical, the outcome of the present matter is not changed. It conclusively appears from the record herein that although the Guercios were experiencing marital difficulties in April, 1964, and did subsequently obtain a judicial separation, nevertheless at the time of the service in question, Mrs. Guercio had not permanently left her husband's abode. The record on this point is clear. Her own testimony reveals that she did on several occasions leave the family home and spend a few days with her mother during the period of March and April, 1964, but that as of April 3, 1964, she had not permanently changed her residence from that of her spouse. Under such circumstances if "residence" be the criteria determinative of valid domiciliary service, we have no hesitancy in holding that on the date in question the "residence" of Mr. Guercio was that of his wife.
In our first decree we found it unnecessary to consider appellant's contention the sale was void for lack of proper appraisal inasmuch as we declared the deficiency judgments void because of lack of service upon Mrs. Guercio of the required three day demand for payment. Having found that such notice was properly served upon Mrs. Guercio, it is now incumbent upon us to decide appellant's remaining contention, namely, that the sale by executory process was void because of improper appraisal.
Pursuant to notice by the Sheriff to appoint an appraiser, plaintiff appointed its manager, Ira James Strother, to value the seized property prior to sale. The notice of seizure and sale served by the Sheriff on the Guercios under date of April 14, 1964 *728 (on defendant husband by personal service and on Mrs. Guercio by domiciliary service), advised defendants that if they wished to appoint an appraiser to so notify the Sheriff on or before May 14, 1964. Neither defendant saw fit to appoint an appraiser whereupon a second appraiser was appointed by the Sheriff and the two proceeded to appraise the property at the sum of $3,600.00. The property, consisting of a house and lot, was then adjudicated to the seizing creditor for the sum of $3,952.51. It was subject to an antecedent lien in the sum of $3,118.87, which outranked that of the judgment creditor. Plaintiff creditor resold the property at a sum between $6,000.00 and $7,000.00, the precise amount not being clear from the record. Plaintiff then instituted the present action for deficiency judgment in the sum of $3,825.00, with interest at 8% from February 10, 1964, until paid, together with 25% of the principal and interest as attorney's fees, and all costs, subject to a credit of $15.00 as of May 27, 1964.
Appellant's attack upon the validity of the appraisal procedure noted is basically two-fold: (1) It is contended the appraisers are not shown to be experienced in the evaluating of real property or knowledgeable with respect to real estate in general; and (2) The appraisal is void on its face considering the property was valued by the appraisers at one-half its worth as evidenced by the subsequent sale thereof at a price approximately double the appraisement.
Nothing in the record sustains the charge the appraisal was defective and therefore vitiated the sale. The law does not require that appraisers be disinterested parties as inferred by counsel for appellant. Considering an exact factual situation in which an appraiser was an employee of plaintiff corporation in Plauche-Locke Securities, Inc. v. Johnson, La.App., 187 So.2d 178, the court held the law contemplates that even a party to the litigation may act as an appraiser considering the appraisal statute LSA-R.S. 13:4366 provides that a litigant who serves as an appraiser shall not receive an appraiser's fee.
The record reveals that Strother is an experienced loan man with many years in the service of plaintiff corporation. It also appears that in the course of making loans he has made numerous appraisals of properties taken by his employer as security for moneys advanced. If experience in the field of property evaluation be the criterion of an appraiser, such qualification was possessed by Strother. The other appraiser, Joe S. Page, appointed by the Sheriff when defendants failed to appoint an appraiser pursuant to notice, was not called to testify. His qualifications do not appear in the record. Under such circumstances it must be presumed he was qualified. It is settled law that a judicial sale, apparently valid on its face, is presumed to have been conducted in accordance with law. He who asserts the contrary bears the burden of so proving. Under such circumstances, the burden lay upon appellant to show Page's lack of qualifications if he were indeed unqualified. Jones v. Alford, La.App., 172 So. 213.
We likewise find no merit in appellant's remaining contention, namely, that the subsequent resale of the property at a substantially greater price than that bid at the sheriff sale is evidence of an unjust, improper and illegal assessment.
The sheriff's return on the writ of seizure and sale reflects sale of subject property to plaintiff corporation for the price and sum of $3,952.51. The precise amount of the subsequent resale by plaintiff does not appear. The record contains only the nebulous statement of Strother to the effect the property was resold for a sum estimated at between $6,000.00 and $7,000.00.
It does not appear when the property was resold by plaintiff nor the exact amount received therefor. Neither is it shown whether improvements were made thereto by the seizing creditor after purchase *729 and before resale. Nor does it appear whether or not the property increased in market value in the interim between judicial sale and resale by the seizing creditor. Under such circumstances, we find nothing improper, fraudulent or irregular concerning the appraisal of subject property and hold said sheriff sale valid.
It follows that our original decree in favor of appellant must be reversed and set aside.
Accordingly, it is ordered, adjudged and decreed that the decree rendered herein on this original appeal reversing the judgment of the trial court be and the same is hereby annulled, reversed and set aside. It is further ordered, adjudged and decreed that the judgment of the trial court in favor of plaintiff Consolidation Loans, Inc., and against defendants Russell A. Guercio and Helen K. Guercio, is affirmed, at defendants' costs.
Affirmed.