The **MEADOW BROOK NATIONAL BANK**, Plaintiff-Appellee,

v.

**John B. MASSENGILL et al., Defendants-Appellants.**

No. 26604.

United States Court of Appeals,
Fifth Circuit.

June 9, 1970.

James J. Morrison, New Orleans, La., Nathan Greenberg, Gretna, La., for defendants-appellants.

Jerry A. Brown, D. Douglas Howard, Bartholomew P. Sullivan, Jr., New Orleans, La., for plaintiff-appellee.

Before WISDOM, GOLDBERG and MORGAN, Circuit Judges.

WISDOM, Circuit Judge.

This diversity case turns on the Louisiana law governing the liability of endorsers liable *in solido* [1] with the maker of a mortgage note. Here the endorsers contend they are released from liability because: the creditor released the principal debtor; they received no demand for payment or notice to appoint appraisers in the executory foreclosure sale; and the note was usurious. We agree with the district judge that the creditor properly and effectively reserved his rights against the endorsers; that the endorsers received all the notice and demand to which they were entitled; and that the endorsers failed to prove that the note was usurious. Meadow Brook National Bank v. Massengill, E. D.La.1968, 285 F.Supp. 55.

I.

August 25, 1964, West Jefferson Professional Medical Plaza, Inc., later merged with Southern Land Title Corporation, executed a note and mortgage in the amount of $600,000 at an interest

---

1. *In solido* liability is substantially equivalent to joint and several liability at common law. *See* Comment, Substantive & Procedural Aspects of Joint, Several, & Joint & Several Obligations, 14 La.L.Rev. 828, 851 (1954) ; Comment, Solidary Obligations, 25 Tulane L.Rev. 217, 228 (1951).

rate of eight percent per annum. The note, payable to "Ourselves", was endorsed on the back first by West Jefferson, the maker, then by defendants John B. Massengill, Mario M. Bonfanti, Julian E. Hotard, Frank Spalitta, James H. Pfister, Charles L. Mammelli, Jr., and Sam J. Recile. The maker and endorsers on the note bound themselves jointly, severally, and *in solido* by the related act of mortgage on an apartment complex now known as Butterfly Terrace No. 1. Meadow Brook National Bank [2] obtained the note at a five percent discount.

Payments lapsed in 1966. The bank filed suit for foreclosure against the property by executory process. The Bank served a copy of the petition and a notice of demand for payment upon all the endorsers. In reorganization proceedings involving Southern Land Title, the federal district court for the Eastern District of Louisiana issued a stay order against this foreclosure. Consequently, in February 1967, the Bank brought the present suit against the endorsers for the full amount owed on the note.

While this present suit was pending, the Bank filed a petition in the Southern Land Title reorganization proceedings, asking the trustee to abandon and disclaim Butterfly Terrace No. 1 and another piece of property (the subject of a different note). The trustee and district judge consented to do so on the condition that the Bank release Southern Land Title from liability on the note. After some hesitation, the Bank agreed to the release. August 8, 1967, the district court disclaimed the property in a judgment providing

> that the debtor corporation is hereby released and forever discharged from any and all liability of every kind and

nature whatsoever to the petitioning creditor on account of the loans secured by the mortgages on these two properties, *fully reserving, however, to the petitioning creditor any and all right which it has had, now has or might have against any other person or persons, other than the debtor corporation or its subsidiaries, who are or might be liable or indebted unto it on the notes evidencing the debts secured by the mortgages on these two properties.*

(Emphasis added.)

The Bank thereupon instituted a new foreclosure suit in the state court, naming only the mortgagor as defendant, but specifically reserving its rights against the endorsers. The sale was advertised in accordance with state law. The property was appraised at $200,000, and the Bank bought the property with the high bid of $200,000. The Bank credited against the note this amount along with fire insurance payments it had received. It has now secured judgment in the present suit against the endorsers of $441,490.77 with interest at eight percent per annum from December 20, 1967, and ten percent of the interest as attorneys fees. From this judgment, the endorsers appeal.

## II.

■■ The endorsers argue that they are released because the Bank released West Jefferson, the maker of the note. An endorser is a secondary obligor under the Louisiana Negotiable Instruments Law, LSA–R.S. § 7:66, and section 7:120 would determine whether the endorsers were discharged. The district court found, however, and the parties agree that in this case the endorsers' liability on the note is *in solido* with the maker.[3] Article 2203 of the Louisiana Civil Code instructs us that

2. Meadow Brook has now merged with the National Bank of North America.

3. On the face of the note the following provisions appear:

> Each maker and endorser of this note hearby waives demand, protest, and notice of protest, all pleas of division or

> discussion, and all requirements necessary to hold each as maker and endorser; and each also waives all rights to claim homestead or any exemption allowed by the constitution and laws of this or any other State in the United States.

[t]he remission or conventional discharge in favor of one of the codebtors *in solido*, discharges all the others, *unless the creditor has expressly reserved his right against the latter.*

(Emphasis added.) The Louisiana courts have stated that

> there is nothing sacramental about the form in which such a reservation shall be made. No one is presumed to renounce a right unless it clearly appears that he intended to do so. And the intention to reserve a right against codebtors may be inferred from any expression in the release of one codebtor negativing the intent to release the other codebtors.

Landry v. New Orleans Public Service, 177 La. 105, 147 So. 698, 700 (1933).

■■■■ We fail to see how the release of West Jefferson contained in the August 8, 1967, order of the Eastern District of Louisiana can be said not to have reserved the Bank's rights against the endorsers. That order expressly stated that it

> fully reserv[es] * * * to the petitioning creditor [the Bank] any and all right which it has had, now has or might have against any other person or persons * * * who are or might be liable or indebted unto it on the notes evidencing the debts secured by the mortgages on these two properties.

The endorsers contend that the Bank failed to reserve its rights when it first attempted to foreclose against the property and when it first petitioned the bankruptcy court for a release of the property. But at that time, no release of West Jefferson was contemplated. Thus, no reservation was then necessary. When the district court and the trustee required a release, the Bank was careful to obtain a sufficient reservation of its rights in the resulting order. It reaffirmed those rights in the executory foreclosure proceeding. Therefore, we

---

This note is subject to all the provisions of the Act [the mortgage] with which it is paraphed for identification, and each maker and endorser is bound jointly, severally and in solido thereby, and agrees to comply therewith.

Each maker and endorser does, moreover, bind and obligate himself, in case it should become necessary to place said note in the hands of an attorney-at-law for the recovery of the amount or any part thereof, and/or the collection of advances made for taxes, insurance, paving, repairs, improvements or other outlays upon the mortgaged property, to pay the fees of the attorney-at-law so employed, which fees are fixed at ten per cent of the total amount involved. On the reverse, below the endorsement of the maker and above the endorsements of the defendants, is the following language:

The parties hereto, whether maker, surety or indorser, hereby waive presentment, protest and notice of nonpayment; and also waive all rights of exemption which they have or may have under the Constitution and Laws of this or any other State, or of the United States, and the indorsers and sureties hereby agree to extensions of time of payment hereof *without notice to them* of such extensions.

Although there might be some doubt as to what is the antecedent of the *"in solido"* language of the second paragraph on the face of the note the Supreme Court of Louisiana has decided that language like that of the first paragraph and that appearing on the reverse of the note result in primary liability on the part of the endorsers. Central Sav. Bank & Trust Co. v. Oilfield Supply & Scrap Material Co., 202 La. 787, 12 So.2d 819, 821 (1943). According to LSA–R.S. 7:192 (Negotiable Instruments Law), "[t]he person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay same". The result is the same if the liability is characterized as *in solido* (*see* W. F. Brown & Sons v. Easterly, 4 So.2d 73 (La.App.1941); Comment, Article 3045 & Solidary Suretyship, 39 Tulane L.Rev. 85, 86 (1964)) as the district court characterized it and as a Louisiana court did on substantially similar language in New Ulm State Bank v. Moore, 185 So.2d 367 (La.App. 1966).

For an analysis of some of the problems in treating solidary suretyship under the Civil Code see Comment, Article 3045 & Solidary Suretyship, 39 Tulane L.Rev. 85 (1964).

agree with the district court that the endorsers are not released on that count.[4]

### III.

We take up next the question whether the endorsers should be released because the Bank did not serve them with notice either of demand for payment or the demand to appoint appraisers in the executory foreclosure proceedings.

█ In the first place, we observe that by the terms of the note the endorsers specifically waived "demand, protest and notice of protest" and "presentment, protest and notice of non-payment".[5] If there were any doubt on that score, the evidence amply indicates that a demand for payment was continually outstanding against the endorsers. The Bank had commenced this very suit to compel the endorsers to pay the note some six months before its final and successful foreclosure proceeding in the state court. But the endorsers maintain that Louisiana law requires the creditor to have named them party defendants in the executory foreclosure proceeding if he is to hold them liable now. To support this contention, they cite Consolidation Loans, Inc. v. Guercio, 200 So.2d 717 (La.App.1966), a Louisiana Court of Appeals case. In *Guercio*, the Louisiana First Circuit ruled that a co-maker of a note who was part owner of the mortgaged property and was named a defendant in the executory foreclosure proceedings must receive a demand for payment. In the case before us, however, the endorsers did not possess an interest in the property. As we have already pointed out, moreover, not only did the endorsers here waive demand for payment; such a demand was outstanding against them. Thus, the policy that guided the *Guercio* court—that a debtor should have the opportunity to pay the indebtedness—is fulfilled here. Finally, *Guercio* did not pass on the question who should be named a party in the foreclosure proceedings; the Louisiana First Circuit had already ruled in Polk Chevrolet, Inc. v. Vicaro, 162 So.2d 761 (La.App.1964), that a co-maker obligated *in solido* was not entitled to be named a defendant in the foreclosure proceedings. In short, we find no authority to sustain the contention that an endorser without interest in the property must be named a defendant in an executory foreclosure.[6]

4. *See* S. P. Weaver Lumber & Supply Co. v. Ashford, 12 So.2d 834, 837 (La.App. 1943).

The endorsers refer us to C.I.T. Corp. v. Rosenstock, 205 So.2d 81 (La.App. 1967), for the proposition that impairment of the endorsers' subrogation rights releases them. We do not find *Rosenstock* applicable in this case, however, because there the court specifically proceeded on the assumption that the endorser was a simple surety rather than bound *in solido*. (The terms of the note in *Rosenstock* indicate that this finding is questionable in light of a case decided by the same court the previous year, New Ulm State Bank v. Moore, 185 So.2d 367 (La.App.1966), and in light of the Louisiana Supreme Court's decision in *Oilfield Supply, supra* note 3.) Thus, the *Rosenstock* court did not deal with article 2203, the determining authority in this case. Glass v. McLendon, 66 So.2d 369 (La.App.1953), also cited by the endorsers, discharged endorsers only because the value of the mortgaged property exceeded the amount still due on the note. Here, the Bank has given the endorsers full credit for the value of the mortgaged property. That credit appears to satisfy the requirement of article 2203 that where a creditor discharges one debtor and reserves his right against the others, "he can not claim the debt without making a deduction of the part of him to whom he has made the remission". *See* Danks v. Maher, 177 So.2d 412, 422–423 (La. App.1965); Comment, Substantive & Procedural Aspects of Joint, Several, & Joint & Several Obligations, 14 La.L. Rev. 828, 853–54 (1954).

5. *See* note 3 *supra*.

6. The *Guercio* court went beyond the facts of the case before it to state in dictum its view that even a co-maker *without interest* in the mortgaged property who was named a defendant in the foreclosure should receive a notice of demand for payment. This conclusion is difficult to understand in light of *Vicaro's* conclusion that such a co-maker need not be named in the action. But the *Guercio* court

With regard to the notice to appoint appraisers, the endorsers mistakenly rely again on *Guercio*. The *Guercio* court did not reach the appraisal issue on the first hearing and on rehearing found the appraisal sufficient. The only authority on point is Gumina v. Dupas, 178 So.2d 291 (La.App.1965), writ denied, 248 La. 442, 179 So.2d 430 (1965), where the Louisiana Third Circuit held that a co-maker without interest in the mortgaged property was not entitled to notice to appoint appraisers. The Louisiana Deficiency Judgment Act, which ultimately must determine the question, provides that

> If a mortgagee or other creditor takes advantage of a waiver of appraisement of his property, movable, immovable, or both, by a debtor, and the proceeds of the judicial sale thereof are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor. The mortgagee or other creditor shall not have a right thereafter to proceed against the debtor or any of his other property for such deficiency, * * *.

LSA–R.S. § 13:4106. The purpose of this Act is to deter a creditor from forc-

ing a mortgagor to waive the benefit of the Louisiana appraisal requirements, that at the foreclosure sale the highest bid reach at least two-thirds of the appraised value of the property. LSA–C.C.P. art. 2336; *see* 14 La.L.Rev. 285, 288 (1953). But here the property was fully appraised, full advertisement of the sale was made, and the sale price met the legal standard. Moreover, to read the statute literally, the endorsers possessed no property upon which to waive an appraisal. We conclude that *Dupas* correctly states the law of Louisiana in this regard and that no waiver of appraisal took place within the meaning of the Louisiana Deficiency Judgments Act simply because the endorsers were not given opportunity to appoint appraisers.[7]

## IV.

The final question is whether the loan was usurious. Louisiana law limits conventional interest rates to eight percent. LSA–C.C. art. 2924. The endorsers contend that this eight percent note, when discounted, exceeds that rate. We must first determine, however, whether the transaction was a loan or a sale, for a long line of authority holds that in Louisiana usury is not a defense applicable to the financial prac-

evidently felt itself bound by the Louisiana statute which provides that

> A final judgment shall be annulled if it is rendered:
> * * * * *
> (2) Against a defendant who has not been served with process as required by law and who has not entered a general appearance, or against whom a valid judgment by default has not been taken * * *.

LSA–C.C.P. art. 2002. Gumina v. Dupas, 178 So.2d 291 (La.App.1965), writ denied, 248 La. 442, 179 So.2d 430 (1965), on the other hand, reached a diametrically opposed conclusion, holding that a co-maker without interest who *was* named in the foreclosure proceeding is not entitled to demand for payment or notice to appoint appraisers. As we stated in text, we do not find *Guercio* applicable to the case before us. Furthermore, we note

the subsequent history of the two cases: on rehearing, the *Guercio* court found that all its views on notice were dictum because the evidence showed the required notice had been given, 200 So.2d at 726; in *Dupas*, the Louisiana Supreme Court denied a writ of review, stating that "[t]he judgment complained of is correct". 248 La. 442, 179 So.2d 430 (1965).

7. For authority that the Deficiency Judgments Act applies only to the mortgage debtor and cannot be availed of by the endorser even where *no* appraisal took place, *see* Commercial Credit Equipment Corp. v. Larry Parrott of Gueydon, Inc. 212 So.2d 860, 864 (La.App.1968) (on rehearing); Southland Investment Co. v. Motor Sales Co., 198 La. 1028, 5 So.2d 324 (1941). *But see* 15 La.L.Rev. 865 (1955).

tice of commercial discounting.[8] This determination is a question of fact on which the party pleading usury bears the burden of proof. Meadow Brook National Bank v. Recile, E.D.La.1969, 302 F.Supp. 62, 71; Medical Arts Building Co. v. Southern Finance & Development Co., 5 Cir. 1929, 29 F.2d 969; Succession of Jenkins, 5 La.Ann. 682 (1850).

 In the case before us, the note is payable to "Ourselves" in the amount of $600,000 at eight percent interest, it is endorsed in blank by the maker, and counsel have stipulated that the Bank obtained the note at five percent discount. The endorsers refer us to Meadow Brook National Bank v. Recile, E.D. La.1969, 302 F.Supp. 62, to support a finding of usury on these facts. But a careful reading of Judge Heebe's opinion in that case shows that he considered the evidence scant; a prima facie case was made out primarily on the ground that the note was payable *to the order of the bank*. Indeed, Judge Heebe distinguished the case of Lafayette Royale Apartments, Inc. v. Meadow Brook National Bank, 5 Cir. 1968, 397 F.2d 378, because there the note was payable to the order of bearer. *See* 302 F.Supp. at 71 & n. 5. Thus, the endorsers' case here is substantially weaker. They ask us to find a usurious loan where the note was payable to "Ourselves", endorsed in blank, and obtained at 95 percent of par. On these same facts, the Bank claims that it bought a pre-existing loan and simply had it redocumented. On the evidence submitted, a fact finder could not determine which contention is accurate. But since the burden of proving usury lies with the endorsers, we conclude with the district judge that they have failed to meet that burden; the mere proof of "[p]ayment of a sum less than the face value of the note is not sufficient to constitute usurious interest". 285 F.

Supp. at 58. Consequently, we do not reach the further issue whether endorsers who sign as individuals but are bound *in solido* can raise the defense of usury when it is precluded to the maker of the note because it is a corporation. LSA–R.S. 12:703.

We affirm the judgment of the district court.

8. Lafayette Royale Apts., Inc. v. Meadow Brook National Bank, 5 Cir. 1968, 397 F. 2d 378; Lubbock Hotel Co. v. Guaranty Bank & Trust Co., 5 Cir. 1935, 77 F.2d 152; Medical Arts Bldg. Co. v. Southern Finance & Development Co., 5 Cir., 1929, 29 F.2d 969; People's Bank & Trust Co. v. Fenwick Sanitarium, 130 La. 723, 58 So.2d 523 (1912); 40 Tulane L.Rev. 452, 456 (1966).